**UNITED STATES ex rel. Raynard DUNN, Appellant,**

**v.**

**J. Leland CASSCLES, Superintendent, Comstock Correctional Facility, Appellee.**

**No. 671, Docket 73-2321.**

United States Court of Appeals, Second Circuit.

Argued Jan. 24, 1974.

Decided March 25, 1974.

John A. Keeffe, New York City (Keeffe & Costikyan, New York City on the brief), for appellant.

John Proudfit, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of N.Y.; Samuel A. Hirshowitz and Iris A. Steel, Asst. Attys. Gen. of counsel), for appellee.

Before MOORE, HAYS and OAKES, Circuit Judges.

OAKES, Circuit Judge:

This appeal by a prisoner in state custody is from a denial of a writ of habeas corpus under 28 U.S.C. § 2254. Appellant alleges that his plea of guilty in Supreme Court, Bronx County, New York, to the crime of robbery in the third degree, NYPL § 160.05, was constitutionally invalid. The court below asserted that the appellant's claim of invalidity was based on an assertion of his innocence at the time of his plea, but the claim as we perceive it is more complex, that, within North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the state court judge failed to ascertain if there were a factual basis for the plea. We agree with appellant's claim and reverse the judgment.

Appellant was charged in an indictment with second degree robbery, second degree assault and third degree grand larceny. On March 8, 1971, he appeared before Justice Postel of the New York Supreme Court, represented by a Legal Aid attorney, Robert Lupo, Esq. These proceedings commenced with Mr. Lupo stating that his client wished to enter a plea of guilty to robbery in the third degree, a Class D felony, under the first count of the indictment, to cover the entire indictment against him. The State recommended acceptance of the plea and the court clerk stated that if the final finding of the court were that appellant was a narcotic addict he could be certified to the care and custody of the Narcotic Addiction Control Commission (NACC) for a period not to exceed 60 months.[1] The sentencing judge was very careful to ask the defendant if he wanted to enter the plea and if he wanted the court to consider placing him in the "Rockefeller Program," that is to say, under the NACC. Justice Postel also ascertained that there were no promises and that appellant understood that his plea would act as a waiver of the various constitutional rights such as trial by jury.

The judge then went on to the question whether appellant admitted the commission of the crime. The answer was yes, and the sentencing judge asked him more specifically if he did "steal money from Judy Berloco on December 11, 1970 . . . ." After several explanations by the defendant describing his arrest but not admitting to the crime, the court asked twice, "Did you commit the (this) crime?" and the defendant responded on both occasions, "Yeah." The court then said, "All right, that means you stole from Judy Berloco; is that right?" The defendant said, "Yeah, excuse me, may I say something, Your Honor?" He then went on to say, with the court's permission, "If I say I didn't do it, I won't get the Rockefeller, you'll give me the four years and take me to trial. I'll say I did it." On the strength of that, the sentencing judge said, for the third time, "Did you commit this crime?" and the defendant said, "Yeah." At that point the court said, "Tell me what you did now in your own words," being apparently unsatisfied that the elements of the crime had been established. The defendant then proceeded to relate that he was driving home with a companion on Bruckner Boulevard, and was stopped at Evergreen Avenue, where police jumped out of their car and searched them, taking them in a car down the block where there was a lady. This lady said she wasn't sure but that the height of her assailant did fit appellant, the result being that the policemen put him in the car.

At this point the judge interrupted to say, "So you didn't do this, did you?" and the defense attorney, Mr. Lupo, interjected, "Just tell the truth." The appellant said, "No, I didn't do it." The court then said "All right, I won't take your plea. Let's go to trial." The defendant replied, "No. Then I want to get the NACC though." The court said, "I can't send you to NACC unless you've committed a crime and if you tell me

1. Thus obviating the kind of claim that underlies another recent habeas corpus case before us, United States ex rel. Leeson v. Damon, No. 73-2597 (2d Cir., 1974).

you didn't commit a crime—" whereupon the defendant replied, "I commit the crime." The court then said, "What did you do?" The defendant said, "I had what you said I had down there." Mr. Lupo then said "I can't plead him under these circumstances, Judge." After a conference at the bench between court and counsel, the defendant sought to and was permitted to explain. He said, "What I'm trying to say is if I do say I'm not guilty right, and it goes to trial, anything happen that they find me guilty whether I did it or not I got a lot of time facing me. That's what I want you to understand me. That's what has me puzzled." The court then went on to say, "Are you taking this to avoid the possibility and risks of a trial?" and the the defendant said, "Yes." The court said, "Take his plea. Get his pedigree." His pedigree was taken and included the following statement: "Stands mute." Counsel asked for and the court granted an NACC exam, and subsequently did sentence appellant on April 18, 1971, to an indefinite term of imprisonment not to exceed four years.

The conviction was unanimously affirmed without opinion by the Appellate Division, First Department. People v. Dunn, 40 A.D.2d 761, 336 N.Y.S.2d 411 (1972). Leave to appeal to the New York Court of Appeals was denied on November 1, 1972. Judge Brieant below held that "Petitioner, advised by competent counsel, made a voluntary and intelligent choice among the various alternatives open to him. His guilty plea is therefore constitutionally valid." He based his decision principally on North Carolina v. Alford, *supra*, where, he said, the record also contained assertions of innocence by the defendant, but the Court held that the defendant's guilty plea was not rendered invalid by such an assertion.

We think the opinion below takes too narrow a view of *Alford*. It is true that the Court is very clear in saying that "an express admission of guilt . . . is not a constitutional requisite to the imposition of criminal penalty." 400 U.

S. at 37, 91 S.Ct. at 167. The *Alford* Court stated also that "An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *Id.* And the Court upheld the plea of guilty to second degree murder with a maximum penalty of 30 years' imprisonment where conviction following a jury verdict of guilty on a first degree murder charge would have involved either death or a life sentence, the decision being that the plea was not rendered involuntary simply on the basis that it was entered to avoid the possibility of the death penalty.

At the same time, and this is what the court below omitted to take into account, the opinion delivered by Mr. Justice White points out that "Here the State had a strong case of first-degree murder against Alford," and negates a distinction between a plea that refuses to admit commission of a criminal act and a plea containing a protestation of innocence "when, as in the instant case, a defendant intelligently concludes that his interests require entry of a guilty plea *and the record before the judge contains strong evidence of actual guilt.* Id. (emphasis added). "In view of the strong factual basis for the plea demonstrated by the State and Alford's clearly expressed desire to enter it despite his professed belief in his innocence," the Court held "that the trial judge did not commit constitutional error in accepting it." *Id.* at 38, 91 S.Ct. at 168 (footnote omitted). An accompanying footnote is strong authority for the proposition that

Because of the importance of protecting the innocent and of insuring that guilty pleas are a product of free and intelligent choice, various state and federal court decisions properly caution that pleas coupled with claims of innocence *should not be accepted unless there is a factual basis for the plea* . . . and until the judge taking the plea has inquired into and

sought to resolve the conflict between the waiver of trial and the claim of innocence.[2]

*Id.* at 38 n. 10, 91 S.Ct. at 168 (emphasis added).

■ Here the judge taking the plea did not assure himself that there was a factual basis for the plea. The State did nothing to supply the missing elements by way even of an offer of what its proof would have been had the case gone to trial. The defendant's affirmative general statements that he did commit the crime were also offset by negative statements that he did not. He wanted NACC treatment and not to run the risk of spending some years in prison. While he may have been making a voluntary choice, nevertheless even his attorney said, "I can't plead him under these circumstances." Although no factual basis was established or proffered, the court took the plea.

■ It is true that inconsistencies on the part of the defendant are themselves insufficient to nullify a plea, but this is so only when the requirement that there be a factual basis for the plea is satisfied. Griffin v. United States, 132 U.S. App.D.C. 108, 405 F.2d 1378, 1380 (1968); Bruce v. United States, 126 U. S.App.D.C. 336, 379 F.2d 113, 119 (1967) (high probability of conviction is sufficient even though the judge need not reach a definite conclusion of guilt). *See also* ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty § 1.6, at 30 (Approved Draft 1968). As the New York Court of Appeals said in People v. Serrano, 15 N.Y.2d 304, 308, 258 N.Y.S. 2d 386, 388, 206 N.E.2d 330, 332 (1965), "the mere mouthing of the word 'guilty' may not be relied upon to establish all the elements of [the] crime."

In short, there was here no factual basis for the plea other than the defendant's own "mouthing" of the word "guilty," or general acknowledgment of guilt subsequently denied, and explicable perhaps by the desire on the part of a narcotics addict to obtain treatment as opposed to the risk of being punished for a crime which he may well not have committed. Our own United States ex rel. Burke v. Mancusi, 453 F.2d 563 (2d Cir. 1971), also relied upon by the district court, does not seem to us to involve the point here in question. There the claim was that the guilty pleas were induced by broken promises and the court affirmed the denial of the petition on the ground that petitioner voluntarily and knowingly waived an opportunity to withdraw his pleas.[3]

Judgment reversed; cause remanded with directions to grant the petition on condition that appellant be permitted to withdraw his plea of guilty and, if he pleads not guilty, be tried within 60 days of the order of the district court to be made pursuant hereto.

MOORE, Circuit Judge (dissenting):

Petitioner-appellant, Raynard Dunn, as appears from the minutes at the time of sentence, was obviously trying to play a game with the sentencing judge—a game in which I am not willing to participate. On this appeal, appellant asserts that: his plea of guilty was made "under the duress of his sickness" (Br., at 1); that it was "inconsistent with his protestations of innocence"; that there was no "independent evidence of his guilt"; and that his guilty plea was tantamount to the acquiescence of "one [who] has a gun put to his head and [is] told to either plead guilty or have his head blown off" (Br., at 3, 4).

2. The Court in the same footnote referred to the express provisions of Fed.R.Crim.P. 11 that a court "shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

3. The characterization by the dissenting opinion of what we hold we do not accept: our holding does not relate to any "unfulfilled judicial promise" as we have tried to make clear; rather, it is based upon the failure of the state court judge to ascertain if there were a factual basis for the plea.

There is absolutely no basis for these questions. There was no proof that appellant at the time of sentence was under the influence of drugs. He did not protest his innocence. The State was under no obligation to prove a prima facie case before the sentencing judge and the gun-at-head simile is just a bit of flamboyant rhetoric.

Appellant, before pleading guilty, wanted the sentencing Judge to commit himself to certify appellant for NACC treatment. The Judge, knowing that he could not exercise his judgment in this respect until appellant pleaded, endeavored first to ascertain appellant's decision.

The indictment charged robbery, second degree, grand larceny third degree and assault, second degree. Appellant pleaded guilty to robbery, third degree in satisfaction of the entire indictment.

When asked by the Court whether he wished to plead guilty to robbery, third degree, appellant replied, "Yes, sir." Appellant knew the consequences of his plea. The Court three times inquired, "Did you commit the crime?", appellant responding, "Yeah." After appellant had stated his version of the events leading to his apprehension, the Court said, "You didn't commit this crime, did you?", to which appellant said, "No, I didn't do it." At this point, the Court said, "All right, I won't take the plea. Let's go to trial." When the Court explained, "I can't send you to NACC unless you've committed a crime," appellant said, "I committed the crime."

Quite apart from his desire for NACC treatment, appellant desired to avoid trial because if "it goes to trial, anything [may] happen . . . they [may] find me guilty whether I did it or not I got a lot of time facing me." With appellant vacillating between having committed the crime and not having done so, the Court asked a final question, "Are you taking this to avoid the possibility and the risks of a trial?" to which which appellant replied, "Yes."

Thus, from the same record the majority and I reach diametrically opposite results. They see the case as one in which appellant has been misled into pleading guilty by an unfulfilled judicial promise of a particular sentence or by his own conception of such a promise. I see it only as a case where appellant, unable to commit the Court in advance to an NACC certification, and well knowing the possible consequences of a trial and conviction on the charges contained in the indictment when the whistle blew to end the game, chose to settle for the single lesser count granted to him.