Virgil ALESSI, Petitioner-Appellant,

v.

UNITED STATES of America,
Respondent-Appellee.

Nos. 520, 574, Docket Nos. 78–2128,
78–2129.

United States Court of Appeals,
Second Circuit.

Argued Jan. 11, 1979.

Decided March 7, 1979.

Stephen F. Markstein, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., S.D.N.Y., Howard W. Goldstein, Asst. U. S. Atty., New York City, of counsel), for respondent-appellee.

Steven B. Duke, New Haven, Conn., for petitioner-appellant.

Before KAUFMAN, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.

PER CURIAM:

This is the fourth occasion on which this court has had to deal with two indictments of appellant Virgil Alessi. In one of these indictments, filed in the District Court for the Southern District of New York on August 4, 1975, Alessi and thirteen others were charged in 23 counts with violations of the federal narcotics laws, 21 U.S.C. §§ 173 and 174, and 18 U.S.C. § 2, and 21 U.S.C. §§ 812, 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2. In the other, filed in the District Court for the Eastern District of New York on April 14, 1975, Alessi was charged in eight counts with various tax offenses in violation of 26 U.S.C. §§ 7201 and 7203. After complicated proceedings revolving around Alessi's unsuccessful contentions that both indictments violated the terms of a plea bargain with the Strike Force in the Eastern District of New York in connection with a 1972 narcotics indictment, see *United States v. Alessi*, 536 F.2d 978 (2d Cir. 1976) [E.D.N.Y. tax indictment]; *United States v. Alessi*, 544 F.2d 1139 (2 Cir.), *cert. denied*, 429 U.S. 960, 97 S.Ct. 384, 50 L.Ed.2d 327 (1976) [S.D.N.Y. narcotics indictment], and an agreed transfer of the Eastern District tax indictment to the Southern District, Alessi, represented by Nancy Rosner, an experienced and resourceful attorney who had

long been acting for him in these proceedings, on November 12, 1976, withdrew his prior not guilty plea on each indictment and pleaded guilty to one count in satisfaction of all charges in that indictment. The two counts were Count XVI of the narcotics indictment which charged that Alessi had aided and abetted the distribution and possession with intent to distribute of one-quarter of a kilogram of heroin, and Count Eight of the tax indictment which charged that he had committed the felony defined in 26 U.S.C. § 7201 in that during 1971 he had received taxable income of $37,221.66 on which he owed a tax of $9,036.12; that he was required to file an income tax return and pay the tax on or before April 15, 1972; and that he willfully and knowingly attempted to evade and defeat the tax by failing to make the return and pay the tax "and by concealing and attempting to conceal from all proper officers of the United States of America his true and correct taxable income." On January 5, 1977, Alessi was sentenced to 13 years in prison followed by 6 years special parole on the narcotics count and a consecutive term of 2 years in prison on the tax count.

In the spring of 1978 Alessi moved under 28 U.S.C. § 2255 to vacate both convictions on the ground of inadequacy of the proceedings in which the guilty pleas were taken. The court denied the motions without an evidentiary hearing in an opinion rendered on July 28, 1978. Thereafter, on September 18, 1978, Alessi made a motion, pursuant to F.R.Civ.P. 59(a) and (e) and 60(b), to amend the judgment and for relief therefrom, which, as the Government says, "was in essence a request that the District Court reconsider its denial of the Section 2255 motions." The court denied this on the following day. On September 26, 1978 Alessi filed notices of appeals from both orders of denial.

Shortly before filing his brief and appendix on the appeals, Alessi, on November 17, 1978, moved this court to reinstate a direct appeal from the convictions, which had been taken on his behalf by Ms. Rosner on Janu-

ary 17, 1977, but had been dismissed by the Clerk on May 11, 1977, for failure to comply with a scheduling order. Chief Judge Kaufman denied the motion without prejudice to renewal at the argument of the appeal in the § 2255 proceeding.

The circumstances claimed to warrant reinstatement of the appeal are as follows: Alessi informed Ms. Rosner in January or early February 1977 of his desire to have his guilty pleas nullified. Allegedly she declined to assist him and did not notify him that she had already filed a notice of appeal. A scheduling order sent to Ms. Rosner's office set March 2, 1977 as the date for filing the record and March 21, 1977 as the date for filing the brief and appendix. Ms. Rosner wrote the Clerk that "Mr. Alessi informed us through his present counsel, Jeffrey Hoffman, Esq., that he did not wish to pursue his appeal."[1] Alessi claims to have been unaware of this letter. When the Clerk's office called Mr. Hoffman for confirmation, the answer was that Hoffman was not representing Alessi on the appeal. Alessi claims that he also was not informed of this. He argues that the failure to prosecute the appeal was due to neglect by Ms. Rosner and Mr. Hoffman to keep him informed.

■ We find it exceedingly hard to believe that Alessi, who has benefited from most vigorous representation in his brushes with the law before and since the 1975 indictments, was as bereft of "the guiding hand of counsel," *Powell v. Alabama,* 287 U.S. 45, 69, 53 S.Ct. 55, 77 L.Ed. 158 (1932), as he claims to have been with respect to the appeal in the spring of 1977. Certainly he has had most diligent counsel since the filing of the § 2255 motion in the spring of 1978. Yet it was not until the fall of that year, after the district court had denied the § 2255 motion and its sequel, that counsel moved to reinstate the direct appeal, obvi-

ously for the purpose of gaining the more liberal standard of review prevailing in this circuit on direct appeals from that on collateral attack upon convictions after guilty pleas. See *Del Vecchio v. United States,* 556 F.2d 106, (2 Cir. 1977). To permit reinstatement of the appeal nearly three years after the convictions would create the very evils which the *Del Vecchio* distinction aimed to prevent, see 556 F.2d at 109. One reason for allowing collateral attack is to afford a limited possibility of relief to persons, such as Alessi claims to be, who have suffered from the neglect of counsel in pressing appeals. The circumstance that here an appeal was taken, although, as Alessi claims, without his knowledge, but was not prosecuted, does not entitle him to stand better than a defendant for whom no notice of appeal was filed. We therefore decline to reinstate the appeal.

■ As noted in *Del Vecchio, supra,* 556 F.2d at 111, the Seventh, Eighth and Tenth Circuits have ruled, relying on the quotation in *Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974), from *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), that defects in taking guilty pleas warrant the grant of § 2255 relief only if there was "a fundamental defect which inherently results in a complete miscarriage of justice" and the case presents "exceptional circumstances where the need for the remedy afforded by the writ of *habeas corpus* is apparent."[2] The statements of these circuits reflect, as Judge Feinberg said for us in *Del Vecchio, supra,* 556 F.2d at 111, "the requirement that a defendant must at least show prejudice affecting the fairness of the proceedings or the voluntariness of the plea in order to succeed in a collateral attack based upon a Rule 11 violation." A conflict on this subject will doubtless be resolved as a result of the grant of certiorari, —— U.S. ——, 99 S.Ct. 830, 59 L.Ed.2d 30 (1979), to

---

1. Mr. Hoffman was representing Alessi on a motion to reduce sentence under F.R.Cr.P. 35.

2. The Fifth Circuit has recently reached the same conclusion in *Keel v. United States,* 585 F.2d 110, 113 (5 Cir. 1978) (en banc).

review *Timmreck v. United States*, 577 F.2d 372 (6 Cir. 1978). We will continue to follow *Del Vecchio* unless otherwise instructed.[3]

For purposes of disposition here it will not be necessary to consider all of Alessi's manifold criticisms of the allocution, many of which, even if well-founded, do not rise to the *Hill-Davis-Del Vecchio* level. We shall concentrate rather on two claims that come within that test. These are that Alessi did not understand the nature of the charges to which he was pleading guilty, *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); *Henderson v. Morgan*, 426 U.S. 637, 645, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976); *Irizarry v. United States*, 508 F.2d 960, 964–65 (2 Cir. 1974), and that there were no factual bases for the pleas, *North Carolina v. Alford*, 400 U.S. 25, 38 & n.10, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *U. S. ex rel. Dunn v. Casscles*, 494 F.2d 397, 399–400 (2 Cir. 1974).

We shall deal first with the plea to Count Eight of the tax indictment. After having quoted the charge and elicited that Alessi understood it and had told Ms. Rosner "the whole story about that," the judge went on as follows:

Q  Did you have an income of approximately [$37,000] in 1971?

A  Yes, I did, your Honor.

Q  Did you file a tax return?

A  Late, yes, your Honor.

Q  When did you file it?

A  I don't recall, but it was late, your Honor.

Q  The return was due according to the indictment here on April 15, 1972.

A  It was not filed at that time, your Honor.

Q  You don't remember when it was filed?

A  No, your Honor.

THE COURT: Do you have any knowledge of it?

MRS. ROSNER: I believe it was within a year thereafter, your Honor. 1973 or the early part of 1974.

Q  Why didn't you file a tax return for the year 1971 which was due on or before April 15?

MRS. ROSNER: May I, for a moment, your Honor?

(Pause)

A  In order to avoid payment of taxes, your Honor.

\*  \*  \*  \*  \*  \*

Q  So is it fair to say you knowingly sought to avoid paying the tax for the year 1971?

A  Yes, your Honor.

Alessi contends that this failed to furnish him with an explanation of the nature of the offense defined in 26 U.S.C. § 7201,[4] as explicated with respect to its predecessor in *Spies v. United States*, 317 U.S. 492, 496–500, 63 S.Ct. 364, 367–368, 87 L.Ed. 418 (1943). In that case, after elaborating on the various sanctions for non-payment of taxes—assessment of deficiencies, civil penalties of varying amounts, the misdemeanor of willful failure to file a return or pay a tax now defined in 26 U.S.C. § 7203, and "[t]he climax of this variety of sanctions . . . the serious and inclusive felony . . . of willful attempt in any manner to evade or defeat the tax," Mr. Justice Jackson addressed the question "whether there is a distinction between the acts necessary to make out the felony and those which may make out the misdemeanor." Unsurprisingly his answer was in the af-

3. We have applied the *Hill-Davis* test in other contexts where only the violation of a federal statute was alleged. See *United States v. Sobell*, 2 Cir., 314 F.2d 314, 321, *cert. denied*, 374 U.S. 857, 83 S.Ct. 1906, 10 L.Ed.2d 1077 (1963); *Alfano v. United States*, 2 Cir., 555 F.2d 1128, 1130 (1977); *Edwards v. United States*, 2 Cir., 564 F.2d 652, 654 (1977).

4. Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.

firmative; "it would be unusual and we would not readily assume that Congress by the felony . . . meant no more than the same derelictions as it had just defined" as a misdemeanor, since the felony was "the capstone of a system of sanctions which singly or in combination were calculated to induce prompt and forthright fulfillment of every duty under the income tax law and to provide a penalty suitable to every degree of delinquency."

The Court then grappled with the problem of specifying just what the difference between the two crimes was, a difference "not easy to detect or define." Mr. Justice Jackson found this "in the affirmative action implied from the term 'attempt,' as used in the felony subsection." By its use of this term "Congress intended some willful commission in addition to the willful omissions that make up the list of misdemeanors." Without attempting a complete definition of what such "commissions" might be, the Court said this, 317 U.S. at 499, 63 S.Ct. at 368:

> By way of illustration, and not by way of limitation, we would think affirmative willful attempt may be inferred from conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal. If the tax-evasion motive plays any part in such conduct the offense may be made out even though the conduct may also serve other purposes such as concealment of other crime.

While the colloquy would have been adequate if Alessi had been pleading to Count Seven, a misdemeanor count under § 7203, since his statement that he failed to file his 1971 tax returns "in order to avoid payment of taxes" would have showed the necessary element of willfulness, the mere paraphrasing of Count Eight of the indictment would hardly convey to a layman that the phrase "by concealing and attempting to conceal from all proper officers of the United States his true and correct taxable income" required the Government to prove concealment by something more than failing to file an income tax return. Even if we assume that the indictment was legally sufficient, this does not eliminate the need for making sure the defendant understands it. Conceivably a hearing might show that in fact Ms. Rosner had given Alessi an explanation of *Spies* sufficient for the purpose, although we should think this possibility rather slim. But even if a hearing could provide an answer to the claim that Alessi was not properly advised what the Government would have to prove to convict him under § 7201, this would not answer the further claim of lack of factual basis for the plea. The Government does not suggest that at a hearing it could provide any evidence that Alessi concealed his 1971 income otherwise than by failing to file his income tax return. It says rather (Brief, p. 25):

> Alessi's admission that his failure to file his tax returns was the means by which he chose to evade his taxes for the year in question was, in this respect, sufficient, for purposes of a guilty plea, to satisfy Judge Bonsal that Alessi had committed the crime charged.

This simply flies in the face of *Spies*. We therefore direct the district court to vacate the conviction on the tax count and grant leave to replead.

The situation with respect to the narcotics charge is more complicated. The judge read the charge and elicited answers that Alessi understood it and had discussed the matter fully with Ms. Rosner. Then came the following:

Q   What happened?
    MRS. ROSNER: May I have a moment, your Honor?
    (Pause)
A   I gave Mr. Manfredonia a kilo of heroin.

Q  You gave Mr. Manfredonia a kilo of heroin. Where did you do that, sir, do you remember?

A  In Queens, your Honor.

Q  You gave it to him in Queens?

A  Yes, your Honor.

MRS. ROSNER: I may add, your Honor, that the government's theory of this prosecution is one of aiding and abetting.

THE COURT: I understand that.

Q  I take it at the time you gave this to Mr. Manfredonia, you knew that that package contained heroin, sir?

A  Yes, I did.

The chief criticism of this is that, although the judge understood the meaning of "aiding and abetting," he did not explain it to Alessi.[5] The criticism is sought to be underscored by the claim that the Government would have had to prove that Alessi had given Manfredonia the heroin, knowing that the latter would distribute this, or possess it with an intent to distribute, in the Southern District of New York, not simply because of considerations of venue but to avoid the effect of the earlier plea bargain in the Eastern District, see 544 F.2d at 1152–54. Clearly, it would have been desirable for the judge to have explained this more fully and to have established that Alessi had in fact given the heroin to Manfredonia with a view to the latter's distrib-

uting it in the Southern District or possessing it with an intent to distribute there.

▇▇▇  Here, however, in contrast to the tax count, there is some reason to believe that a hearing might develop both that Alessi had a full understanding of the charge and that there was a factual basis for the plea.[6] As indicated above, Alessi has had extensive experience with narcotics offenses, going back at least to 1972, and has been represented by astute counsel who have forcefully argued that, in light of the plea agreement to the 1972 Eastern District indictment, Alessi could be prosecuted, if at all, only for a crime committed by him in the Southern District rather than the Eastern District. The Government may well be able to develop evidence that Alessi was not at all ignorant of this and thus understood the narcotics charge to which he was pleading sufficiently that collateral relief should not be granted. With respect to factual basis, Judge Bonsal had presided over a ten-day trial of Alessi's co-defendants in the 1975 narcotics indictment, see *United States v. Panebianco*, 543 F.2d 447 (2 Cir. 1976) *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1128, 51 L.Ed.2d 553 (1977), in which Manfredonia was the Government's "most important witness," *id.* at 451. For all we know the record in that case may have given him ample reason for finding a factual basis for the plea; if not, the Government may now be able to demonstrate this. We thus prefer not to pass upon Alessi's contentions of lack of understanding of the narcotics charge and of factual basis for his guilty

**5.** The prosecutor evidently felt some qualms on this score. In answer to the judge's inquiry whether the Government had any other questions it would like him to ask, the prosecutor mentioned, "I take it Mr. Alessi understands the elements of the crime on which he is charged." When the judge answered that he thought he "went over that pretty thoroughly," the prosecutor said simply "[t]he distribution of the heroin" and went on to other matters. Prosecutors as well as defense counsel should display no hesitancy in calling the attention of

trial judges to deficiencies in their administration of Rule 11.

**6.** The defendant argues that *Irizarry v. United States, supra*, 508 F.2d at 964, 967–68 requires that the showing of both the defendant's understanding of the charges and the factual basis of the plea be set forth in the record. The question whether a violation of Rule 11 in those regards provides a basis for collateral relief in the absence of prejudice, however, was neither briefed nor discussed in the opinion. Cf. *Del Vecchio, supra*, 556 F.2d at 110.

plea to it until there has been an opportunity for further factual development.

■ Alessi challenges the validity of the guilty pleas on three other grounds. These are (1) alleged inadequacy in the court's advice that by pleading guilty he would waive his rights to confront the witnesses against him and not to incriminate himself; (2) that deficiencies in the advice in regard to special parole, particularly as to the minimum three-year term required by 21 U.S.C. § 841(b)(1)(A), bring him within the *Hill-Davis-Del Vecchio* standard; and (3) that his attorney had promised that if he pleaded guilty, he would receive concurrent sentences. The third point has been mooted by our vacating the conviction on the tax count, and we do not regard the deficiencies on the first as being so serious as to warrant relief under § 2255. On the other hand, we think it best that the hearing should embrace Alessi's understanding of his liability to special parole [7] and the effect of any misunderstanding on his plea to the narcotics charge.

The judgment is reversed with instructions to vacate the conviction on the tax count and to permit Alessi to replead, and to hold an evidentiary hearing with respect to the conviction on the narcotics count as directed in this opinion.

---

7. He had received the mandatory three-year minimum special parole on his 1972 conspiracy conviction.