**Otis TATE, Plaintiff–Appellant,**

v.

**Frank W. WOOD, Warden, and the Attorney General of the State of New York, Defendants–Appellees.**

**No. 936, Docket 91–2326.**

United States Court of Appeals, Second Circuit.

Argued Feb. 5, 1992.

Decided May 1, 1992.

Abraham L. Clott, Legal Aid Society, Federal Defender Services Appeals Unit, New York City, for plaintiff-appellant.

David Huey, Asst. Dist. Atty. (Francis D. Phillips, II, Dist. Atty. of Orange County, Goshen, N.Y., of counsel), for defendants-appellees.

Before OAKES, Chief Judge, MESKILL and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

Otis Tate filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 seeking relief from a 1984 judgment of the Orange County Court, New York, convicting him, upon a guilty plea, of manslaughter in the first degree and sentencing him to an indeterminate term of imprisonment of four and one-half to nine years, to be served consecutively to a prior 18–year federal term of imprisonment. Tate appeals from the May 16, 1991 order of the

United States District Court for the Southern District of New York (Griesa, J.) summarily denying the *habeas* petition. We reverse.

## FACTS

While serving an 18–year federal sentence petitioner Otis Tate stabbed and killed a fellow inmate at the Otisville Federal Correctional Institution in Otisville, New York. The fatality occurred on April 9, 1983 during a fight between petitioner and the victim, Emanual Stewart. It was witnessed by Benjamin Charles, a correctional officer, and the government's chief witness before the grand jury. Several weeks after this fatality, petitioner was indicted for murder in the second degree. Upon arraignment Gary Abramson, Esq. of the Legal Aid Society of Orange County was appointed as his counsel. A not guilty plea was entered.

Not satisfied with Mr. Abramson's representation, Tate moved on January 30, 1984 for the appointment of different counsel or, in the alternative, to proceed *pro se*. The request for the appointment of another attorney was denied, but the state trial court allowed petitioner to proceed *pro se*, with attorney Abramson assigned to serve as "standby counsel." During much of the period from his May 1983 arraignment until his March 1984 plea Tate was held in solitary confinement. His state *habeas* petition for release from such confinement in order to prepare his defense was denied. In February 1984 defendant wrote a letter to attorney Abramson in which he requested that counsel meet with him to discuss his case. He received the following reply in response:

> ... please be advised that responsibilities here to clients I actually represent preclude my coming to Otisville to assist you in my assigned capacity as your "legal advisor." As I understand that assignment, I am to be available in court during the trial, should you have any questions about the proceedings, and I will be. By electing to appear *pro se* you are responsible for your own preparation.

On March 6, 1984 petitioner appeared before the Orange County Court with attorney Abramson. The record indicates that at that time he consented to this representation. Counsel spoke for petitioner and informed the court that he and his client had spoken together to Assistant District Attorney Singer, and that petitioner now wished to withdraw his previous plea of not guilty, and instead plead guilty to a reduced charge of manslaughter in the first degree, with the condition that he be sentenced to four and one-half to nine years imprisonment. The Assistant District Attorney then asked petitioner a series of questions to establish that the plea was freely and voluntarily given. Tate indicated that he was guilty of the crime charged and was pleading of his own volition. The state court then entered into a plea allocution with defendant and, upon being assured that the plea was valid, accepted his guilty plea. Tate was sentenced to the agreed-upon term.

After exhausting his state remedies, Tate filed the instant petition for a writ of *habeas corpus* in the Southern District of New York alleging that his plea must be vacated on the grounds that the state trial court failed to inquire into the possibility of a self-defense claim or to assure itself that adequate representation was provided. Tate also claimed that he was entitled to *habeas* relief because the state prosecutor ignored its obligation to turn over to him exculpatory material and impeachment evidence in its files, and because he was generally denied effective assistance of counsel. The district court denied the petition without a hearing. For the reasons that follow, we reverse this summary denial and remand the case for a hearing on petitioner's claim that his rights under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), had been violated and that he had been denied the effective assistance of counsel.

## DISCUSSION

### A. Proceedings in State Court

■ We analyze first the proceedings held in the state court. Tate contends his

guilty plea must be vacated because the state trial court at the plea proceedings failed to make any inquiry into a potential claim of self-defense or to assure itself that he received the effective assistance of counsel. He asserts when he related that he stabbed the victim during a fight, the trial court was put on notice that he might be innocent of the crime to which he was pleading guilty, as justification is a complete defense to homicide, N.Y.Penal Law § 35.15 (1987). Justification must be disproved by the government at trial beyond a reasonable doubt, *id.* § 25.00. Petitioner believes the fact that the victim's death occurred during an acknowledged fight was sufficient indicia of the existence of a self-defense claim to require the court taking the plea to develop a further factual basis for guilt before accepting it. We disagree.

In accepting a guilty plea, a trial court must assure that the plea is entered voluntarily and represents an intelligent choice between the different courses open to a defendant. When a defendant fails to bring any matter to the trial court's attention, such as a denial of guilt, that would suggest the need for a factual inquiry, one is not required. *See, e.g., Panuccio v. Kelly,* 927 F.2d 106, 110–11 (2d Cir.1991); *Willbright v. Smith,* 745 F.2d 779, 780 (2d Cir.1984). Here the fact that petitioner stated the stabbing occurred during a fight was not in itself sufficient to indicate that a valid claim of self-defense might be present. A review of the record discloses nothing in the plea colloquy sufficient to put the trial court on notice of a potential claim of justification. Instead, when asked "And did you, in fact, on April 18, 1983— did you take an object in your hands and with the intent to cause serious physical injury to Emanual Stewart, stab him and thereby cause his death?" petitioner replied, without qualification, "Yes, I did." When asked whether he had considered all possible defenses, and whether he was pleading guilty because he was in fact guilty of the crime charged, defendant again answered in the affirmative. When later asked to state the facts underlying the plea, defendant reiterated, "We had a

fight and I had a weapon and I stabbed him with the intent to cause him harm."

We are satisfied upon reviewing the plea minutes that the state trial court made sufficient inquiry into the validity of petitioner's plea. Nothing in Tate's allocution suggested that the doctrine of self-defense was applicable; on the contrary, the court received unqualified assurance from petitioner that he knowingly and voluntarily entered his plea. Thus, petitioner's reliance on *United States ex rel. Dunn v. Casscles,* 494 F.2d 397 (2d Cir.1974) is misplaced. In that case, where the defendant maintained during the allocution that he was innocent of the crime charged, the record did not contain strong evidence of guilt, and no inquiry into the factual basis for the plea had been made, we held defendant's guilty plea was invalid. *Id.* at 400. Here, in contrast, petitioner did not assert his innocence or point to any defense that would negate guilt. Under these circumstances, the plea court's inquiry into the basis for the plea was sufficient.

We also are unable to accept petitioner's contention that the trial court was required to inquire further into the adequacy of defense counsel's representation. The minutes of the plea proceeding do not suggest any reason to doubt that defendant was sufficiently counseled with regard to the plea agreement. Tate indicated he was entering his plea after consulting with his attorney, was familiar with the criminal process, and understood its consequences. Moreover, attorney Abramson—after having been previously relieved of representing petitioner—was present and acting in a stand-by capacity as counsel solely for the purpose of the plea proceedings.

Petitioner's assertion that he was incorrectly told by the Prosecutor that the plea offer was the best available under New York law does not alter this conclusion. Such misapprehension was shared by the prosecution and defense counsel, as well as by the trial court. Absent an indication that the only other permissible plea—assault in the first degree—would have been accepted by the People, petition-

er cannot be said to have been prejudiced by counsel's failure to correct this misstatement. Without some showing of prejudice, petitioner did not plead guilty without the effective assistance of counsel. *See Strickland v. Washington,* 466 U.S. 668, 691–92, 104 S.Ct. 2052, 2066–67, 80 L.Ed.2d 674 (1984). Thus, petitioner's claim that counsel's representation at the state trial court's plea proceedings was so deficient as to mandate further inquiry into its adequacy is without merit.

### B. Proceedings in Federal Court

■ We turn now to the proceedings in the federal district court. Tate contends that it was error for the district court to deny his *habeas* petition without a hearing. His version of the altercation that led to Stewart's death is set forth in his affidavit. There he states that when he encountered Stewart on April 9 in the common area, a place where inmates relax, an argument erupted. He went to Stewart's cell to discuss their differences further, and when the victim reached for a homemade knife on the table in his cell, Tate pushed him, grabbed the knife and returned to his own cell. When he saw a group of other inmates standing with Stewart—a 6′3″, 220-pound man—looking at him, he believed he was going to be attacked. Petitioner declares that he decided to go to the correctional officer standing in the immediate area, give him the knife and let him resolve the matter between him and Stewart. As he was proceeding down the stairs towards the officer, Stewart hit him over the eye with the metal handle of a dustpan, knocking him down, and then hit him in the head while he was down. Tate got up and swung the knife once, "unfortunately" striking Stewart in a vital area. According to the record, the corrections officer observed Stewart with the dustpan in his hands and after the incident noticed that Tate had a "real big bump" on his forehead. Another officer later observed a slight laceration over Tate's right eyebrow.

When the factual allegations of a *habeas* petition, if proved, would entitle a petitioner to relief, a federal court is required to hold an evidentiary hearing if the petitioner did not receive an adequate state court evidentiary hearing, that is, one that is full and fair. 28 U.S.C. § 2254(d)(1) (1988); *Townsend v. Sain,* 372 U.S. 293, 312–13, 83 S.Ct. 745, 756–57, 9 L.Ed.2d 770 (1963); *Maddox v. Lord,* 818 F.2d 1058, 1061 (2d Cir.1987). Tate has not received any evidentiary hearing on his claims in any forum. Because petitioner's *Brady* claim with regard to evidence that the victim Stewart was the initial aggressor would, if credited, entitle him to relief, this case must be remanded for a hearing on that issue. In addition, a hearing must be held to determine whether petitioner was unconstitutionally deprived of his right to conduct a defense.

### 1. *The* Brady *Material*

A criminal defendant has a well-established due process right to require the prosecution to give him whatever material exculpatory evidence it has. Tate's counsel filed an omnibus motion requesting such material, but none was turned over to him. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196–97. The test of materiality in the context of a plea is whether there is a reasonable probability that but for the failure to produce such information the defendant would not have entered the plea but instead would have insisted on going to trial. The inquiry is an objective one that is resolved largely on the basis of the persuasiveness of the withheld evidence. *See Miller v. Angliker,* 848 F.2d 1312, 1322 (2d Cir.), *cert. denied,* 488 U.S. 890, 109 S.Ct. 224, 102 L.Ed.2d 214 (1988).

Petitioner claims that immediately after the plea was entered in state court, the assistant district attorney informed the "Times Herald Record" that the prosecutors had accepted the lesser charge against Tate because of information from their investigation that the victim Emanual Stewart may in fact have been the aggressor. Petitioner declares that this exculpatory ev-

idence, which was consistent with a possible claim of self-defense, was withheld by the prosecutor. In support of this allegation an article appearing in the March 7, 1984 issue of the "Times Herald Record" states, in relevant part

[Assistant District Attorney] Singer said investigation by his office has uncovered evidence that [the victim], who had been serving a 10–year prison sentence for bank robbery, might have instigated the fight, as Tate claims.

He said [the victim] had been "on his back" for some time, and that the tension between the two black men surrounded Tate's association with white inmates.

Tate obtained an affidavit from the reporter who filed this story, verifying the statements attributed to the assistant district attorney. The news story further noted that an Otisville spokesman had confirmed that correctional officer Benjamin Charles, the chief witness against petitioner, had been dismissed from the prison staff, arrested, and indicted on federal narcotics charges. Tate claims that this possible impeachment evidence going to Charles' credibility had also been withheld.

With regard to evidence indicating the victim had been the aggressor in the altercation, we believe that, in view of the newspaper account, petitioner may have a valid *Brady* claim. This kind of information would clearly be exculpatory in terms of establishing a defense of justification. Since this allegation, if borne out, would entitle petitioner to relief, an evidentiary hearing is required. The necessity for a hearing with respect to this claim is particularly appropriate because the evidence allegedly withheld by the People is not found in the record.

Petitioner of course bears a heavy burden in proving this claim on remand. "The rationale underlying *Brady* is not to supply a defendant with all the evidence in the Government's possession which might conceivably assist the preparation of his defense, but to assure that the defendant will not be denied access to exculpatory evidence *only* known to the Government." *United States v. LeRoy,* 687 F.2d 610, 619

(2d Cir.1982) (emphasis added), *cert. denied,* 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983). Thus, *Brady* requires the prosecutor neither "to deliver his entire file to defense counsel," *United States v. Bagley,* 473 U.S. 667, 675, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985), nor to make a disclosure if "the defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory evidence." *United States v. Gaggi,* 811 F.2d 47, 59 (2d Cir.), *cert. denied,* 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 701 (1987).

■ Tate was in the middle of the altercation that led to Stewart's death and obviously was aware of facts leading up to the fight that might have supported a justification defense. If, as the alleged statement by the district attorney suggests, an investigation occurred that convinced the state to accept a guilty plea, that alone should not lead to success for Tate on his *Brady* claim, as the state need not disclose preliminary or speculative information, *see United States v. Agurs,* 427 U.S. 97, 109 & n. 16, 96 S.Ct. 2392, 2400 & n. 16, 49 L.Ed.2d 342 (1976), or information about which the defendant should have known, *Gaggi,* 811 F.2d at 59. Instead, the hearing must demonstrate that helpful evidence differing from that available to Tate was in the hands of the prosecution. Moreover, at the hearing Tate must show that if he had been provided with the withheld evidence there is a reasonable probability that he would have insisted on going to trial. *Miller,* 848 F.2d at 1322.

■ Tate further alleges that the evidence relating to Officer Charles' discharge and narcotics violations was impermissibly withheld from him. The prosecution's duty to disclose encompasses not only exculpatory evidence, but also evidence that may be used to impeach a prosecution witness. *See Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); *Gaggi,* 811 F.2d at 59. But, as respondent points out, petitioner acknowledges in his *habeas* petition that his counsel knew of the officer's arrest and indictment. In addition, it appears from the record that these facts were known by

defendant himself at the time of the plea. Hence, either the information was provided to petitioner or it was discovered prior to the plea, and thus there was no *Brady* violation with regard to the impeachment evidence. *See United States v. Grossman*, 843 F.2d 78, 85 (2d Cir.1988), *cert. denied*, 488 U.S. 1040, 109 S.Ct. 864, 102 L.Ed.2d 988 (1989); *Gaggi*, 811 F.2d at 59.

### 2. *The Ineffective Assistance of Counsel Claim*

■ Tate further challenges the denial of a hearing with respect to his claim that he was not given the effective assistance of counsel at his state plea proceedings. Petitioner's primary argument in support of this Sixth Amendment claim is that his appointed counsel unreasonably neglected to investigate the self-defense claim, even though he was aware of witnesses and medical evidence that would support such a theory. Where a defendant is represented by counsel during the plea process and enters a guilty plea upon his advice, a challenge to the validity of the plea based on ineffective assistance of counsel is governed by the two-part *Strickland v. Washington* test. *See Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). First, defendant must show that counsel's representation fell below an objective standard of reasonableness, as determined by the range of competence required of attorneys in criminal cases. *Id.* at 56, 106 S.Ct. at 369. Second, "defendant must show that there is a reasonable probability that, but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59, 106 S.Ct. at 370-71.

■ Prior to the plea in this case, counsel was relieved at petitioner's request, and thereafter served merely as "standby counsel." The duties of counsel in that capacity are more limited than those of counsel who fully represents a defendant. *Cf. Faretta v. California*, 422 U.S. 806, 834-34 n. 46, 95 S.Ct. 2525, 2541 n. 46, 45 L.Ed.2d 562 (1975). Thus, it cannot be said that counsel's lack of participation in the pre-plea proceedings constituted a Sixth Amendment violation. Petitioner elected to exercise his constitutional right to proceed *pro se* in his own defense, *see id.* at 832, 95 S.Ct. at 2539-40, and concomitant with the right is the caveat that "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *Id.* at 834-35, n. 46, 95 S.Ct. at 2540-41, n. 46.

■ Yet, we remain troubled by the rather unusual circumstances present in this record. Although Tate was granted permission to proceed *pro se*, it appears that he was confined in administrative segregation throughout the ten-month period between his arraignment and plea, and his application to be released from this close confinement to prepare his own defense were denied. In *Eng v. Coughlin*, 858 F.2d 889 (2d Cir.1988) we stated, in the context of disciplinary charges, that "for inmates disabled by confinement in [segregated units] ... the right to substantive assistance is an obligation imposed by the Due Process Clause of the Fourteenth Amendment." *Id.* at 898. We are unable to say with any feeling of certainty whether petitioner's constitutional rights were violated by a failure to afford him the opportunity to prepare his own defense. On remand, the district court should hold an evidentiary hearing to determine the circumstances that existed with regard to Tate's Sixth Amendment claim and decide whether those circumstances constituted a violation of petitioner's constitutional rights.

### CONCLUSION

Accordingly, the summary denial of petitioner's *habeas corpus* petition is reversed and the case remanded for an evidentiary hearing to resolve the *Brady* issue and the claimed denial of the ineffective assistance of counsel.

Reversed and remanded.