**UNITED STATES of America, Plaintiff,**

**v.**

**Dickson VERAS, Defendant.**

**No. 91 CR 461.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 3, 1994.

Carlos Alberto Vazquez, Vazquez & Vazquez, P.C., Nicholas James Faklis, Faklis & Tallis, Edward X. Clinton, Chicago, IL, for Veras.

Ronald D. May, United States Attorney's Office, Chicago, IL, for U.S.

## MEMORANDUM OPINION
## AND ORDER

LINDBERG, District Judge.

Defendant Dickson Veras has moved for a new trial based on the government's failure

to disclose allegations of wrongdoing by one of its primary witnesses prior to trial in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Defendant has also moved for a new trial on the basis of newly discovered evidence.

On January 23, 1992, defendant was convicted of conspiring to distribute ten kilograms of cocaine in violation of 21 U.S.C. § 846, possessing ten kilograms of cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1) and with possessing a firearm in the course of a drug offense in violation of 18 U.S.C. § 924(c). Prior to trial, the government filed a notice of prior conviction which apprised the court that defendant had previously been convicted of a felony drug offense. On April 30, 1992, the court sentenced defendant to twenty-five years' imprisonment.[1] Defendant subsequently appealed.

In December of 1992, the Assistant United States Attorneys who tried the case ("trial Assistants") were informed by a supervisor in the United States Attorney's Office that an investigation was pending involving allegations against one of the government's chief witnesses at trial. The trial Assistants then sent a letter, dated February 1, 1993, to defense counsel informing them of "certain information that ha[d] recently become available to the government" concerning Officer Doe.[2] The letter provided in part:

> The government has information that Officer [Doe] may have provided false information to the Circuit Court of Cook County on at least two occasions. Specifically, false information may be contained in two complaints for search warrant signed by Officer [Doe] in support of applications for two separate search warrants. The first incident occurred in April 1989 and involved the search of Mike Canezaro's

residence and his arrest. The second incident occurred in June 1989 and resulted in the search of Mike Fusco's residence and his arrest.

The nature of the allegedly false information is that in each affidavit, Officer [Doe] averred that he had received information from a confidential informant that narcotics related activity had taken place at the location for which each search warrant was sought.

The Confidential Informant was not identified in either complaint for search warrant; however, Chicago Police Department records bearing Officer [Doe's] name and what purports to be his signature identify one individual as the confidential informant who provided search warrant information for both of these searches. In December 1992, this individual advised the government that s/he did not provide the information described in either complaint for search warrant.

A review of other search warrant affidavits and Chicago Police records is ongoing following the confidential informant's interview to determine whether information may have been inaccurately attributed to him by Officer [Doe] on other occasions and to determine whether payments made to the informant were accurately recorded in Chicago Police Department records. The informant has stated that s/he was not paid as much money as Chicago Police Department records reflect and did not provide search warrant information on as many occasions as indicated in Chicago Police Department records.

At the time Mr. Canezaro alleged to the government that false information was contained in the April 1989 complaint for search warrant, he also alleged that Officer [Doe] and/or other officers participating in the execution of that warrant took about $16,000 and failed to inventory it or to

---

**1.** Pursuant to 21 U.S.C. § 841(b)(1)(A), the mandatory minimum sentence for the above drug trafficking offenses, when coupled with a prior felony drug conviction, is twenty years' imprisonment. The firearm offense carries a mandatory sentence of five years' imprisonment which runs consecutively with any sentence imposed for a drug trafficking crime.

**2.** Pursuant to a protective order entered on January 23, 1993, the court will refer to the officer in question as "Officer Doe." Because the contents of the February 1, 1993 letter (and to a certain extent the officer's identity) have been openly discussed in court and in subsequent court documents, the court will discuss the facts set forth in the letter in its memorandum opinion.

return it to him. To date, no corroboration of the allegation of missing money has been received.

Mr. Canezaro made no *Franks* challenge to the search warrant. Until December 1992 no corroboration of the allegation of false information in the search warrant was known to the government. Mr. Canezaro has several felony convictions, including one for perjury, and was convicted of the narcotics charges brought against him after the search of his residence. (Case number 89 CR 11091)

Upon the execution of the June 1989 search warrant, Mike Fusco was arrested and charged with narcotics violations. (case number 89–14556) Subsequently, a motion attacking the search warrant on *Franks* grounds was filed and a hearing was held before the Honorable Earl E. Strayhorn. Officer [Doe] was among several witnesses who testified at that hearing. Judge Strayhorn ultimately found that defendant had met his burden and thereupon quashed the warrant and suppressed the evidence seized pursuant thereto. No specific findings were made as to the credibility of any witness who testified at the hearing.

Officer [Doe], through his counsel, Joseph Roddy, has denied the allegations relating to both the April and June 1989 search warrants, but, citing the Fifth Amendment, he has declined to be interviewed by government agents or attorneys. Mr. Roddy had advised this office that Mr. [Doe] will not agree to be interviewed on these topics and if asked about these subjects under oath, he would assert his privilege under the Fifth Amendment.

(Government's February 1, 1993 letter at 1–2).

In a subsequent submission, the government set forth the procedural history of the allegations against Doe and resulting investigation as follows. On July 17, 1990, an agent from the FBI's public integrity squad and an Assistant United States Attorney from the Criminal Division of the Chicago United States Attorney's Office formally interviewed Canezaro regarding the allegations he made against Officer Doe during his probation revocation hearing. The subsequent FBI investigation involved identifying and interviewing other individuals who had been arrested by Doe and another officer against whom Canezaro had made similar allegations. As of July 1991, the FBI did not find any new or corroborating evidence.

In July of 1991, the Assistant United States Attorney assigned to the investigation learned that Officer Doe had been detailed to the DEA task force since March of 1990 and was therefore working on many cases being prosecuted by the United States Attorney's Office in Chicago. The United State's Attorney concluded that the Chicago United States Attorney's Office should recuse itself and transfer the investigation to the United States Attorney's Office in Milwaukee.

At the time the investigation was transferred, the Associate United States Attorney and the Deputy United States Attorney in Chicago contemplated whether they should disclose the allegations against Doe pursuant to *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). They determined that no disclosure was required at that time for two reasons:

> First, the witness [Doe] was unaware of the investigation, and therefore could not be said to be trying to ingratiate himself to the United States Attorney's Office by providing favorable testimony. Second, the allegations at that time consisted solely of the word of a convicted drug dealer and perjurer who had much to gain by fabricating the allegations. In light of the fact that the investigation at that point revealed no corroboration for the allegations, the charges appeared to be the type of preliminary and speculative information that need not be disclosed. See e.g., *Tate v. Wood,* 963 F.2d 20, 25 (2d Cir.1992); *United States v. Agurs,* 427 U.S. 97, 109 n. 16 [96 S.Ct. 2392, 2400 n. 16, 49 L.Ed.2d 342] (1976); *United States v. Eley,* 335 F.Supp. 353, 357 (N.D.Ga.1972); *Giles v. Maryland,* 386 U.S. 66, 98 [87 S.Ct. 793, 809, 17 L.Ed.2d 737] (1967) (Fortas, J., concurring).

(Government's supplemental submission in response to motion for a new trial at 5).

According to the government, the Chicago United States Attorney's Office realized that disclosure might become necessary given the results of the investigation by the Milwaukee Office. The Chicago Office asked the Chief of the Criminal Division in the Milwaukee United States Attorney's Office to inform them if either Doe became aware of the investigation or the investigation revealed any corroborating evidence.

In December of 1992, the Chicago United States Attorney's Office received word from the Milwaukee Office that corroborating evidence had been discovered. The corroborating evidence was the testimony of the confidential informant who allegedly provided information for both the Canezaro and Fusco searches.[3] As set forth in the February 1, 1993 letter, the informant denied providing the information described in either complaint for search warrant. The informant also advised the government that s/he was not paid as much money as Chicago Police Department records reflected and did not provide search warrant information on as many occasions as indicated in the Chicago Police Department records.

On April 27, 1993, defendant moved for a new trial under Federal Rule of Criminal Procedure 33 based upon "newly discovered evidence."[4] Subsequent to the filing of defendant's motion for a new trial, Cook County Circuit Judge Toomin held a hearing on Canezaro's post-conviction petition. Officer Doe, Canezaro and the confidential informant testified under oath at the hearing. Judge Toomin determined that Canezaro had not proven by clear and convincing evidence that Officer Doe had perjured himself concerning the information furnished to him by the confidential informant which was set forth in the complaint for search warrant. Judge Toomin did not find Canezaro or the confidential informant credible and denied Canezaro's post-conviction petition.

In *Brady v. Maryland,* 373 U.S. 83, 88, 83 S.Ct. 1194, 1197 (1963), the Supreme Court held that due process requires the prosecution to provide the defense, upon request, with any evidence favorable to the accused which is material either to guilt or punishment. The Supreme Court subsequently held that the government's *Brady* obligation to provide evidence to the defense includes evidence affecting a government witness' credibility. *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766 (1972).

In *Giglio,* defense counsel filed a motion for a new trial after discovering that the government had failed to disclose an alleged promise made to its key witness that the witness would not be prosecuted if he testified before the grand jury and at trial. At the hearing on the motion for a new trial, the Assistant United States Attorney who presented the case to the grand jury admitted that he had made the promise to the witness. The Assistant who tried the case testified that he was unaware of the promise. The Supreme Court attributed the promise to the government despite arguments that the Assistant lacked authority to make the promise and failed to inform his superiors and associates of the promise. The Court ultimately held that when the reliability of a given witness may be determinative of guilt or innocence, suppression of such material evi-

---

3. The government contends that the Chicago and Milwaukee United States Attorney's Offices had no knowledge or involvement with the Fusco case until approximately April of 1992. The government's briefs did not address why the Fusco information was not considered to be corroborative of the Canezaro allegations against Officer Doe resulting in the disclosure of the evidence in April of 1992. However, the government's *in camera* submissions, when read in conjunction with the government's February 1, 1993 letter, reveal that the government did not discover any evidence specifically concerning Officer Doe until the government interviewed the confidential informant about the Fusco case in December of 1992.

4. The parties' initial characterization of the evidence as "newly discovered" is only partially correct. Since certain individuals in the United States Attorney's Office were aware of the Canezaro allegations prior to trial, this evidence was not newly discovered but newly disclosed. The failure to disclose this evidence prior to trial presented a possible *Giglio* violation. The newly discovered evidence was the confidential informant's arguably corroborating testimony which was discovered approximately a year after the trial.

dence constitutes a violation of the due process clause and requires a new trial.

In *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) the Supreme Court reaffirmed that impeachment evidence falls within the *Brady* rule but reversed the Ninth Circuit's determination that the government's failure to disclose *Brady* material required an automatic reversal. The Court held that "a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *Bagley* at 678, 105 S.Ct. at 3381. The Supreme Court set forth the following standard for determining the materiality of undisclosed evidence:

> The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

*Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383.

The Supreme Court explained that a rule that the prosecutor commits error by any failure to disclose evidence favorable to the accused, no matter how insignificant, would impose an impossible burden on the prosecutor and would undermine the interest in the finality of judgments:

> [T]he prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial:

>> "For unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring that the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose. . . .

>> "... But to reiterate a critical point, the prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial."

*Bagley,* 473 U.S. at 675–76, 105 S.Ct. at 3380, quoting *United States v. Agurs,* 427 U.S. 97, 108, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976).

█ To obtain a new trial on a *Brady* claim, defendant must show that the evidence was favorable to him, was suppressed by the prosecution and was material to the case. *United States v. Dimas,* 3 F.3d 1015, 1017 (7th Cir.1993).

█ The preliminary issue is whether the evidence was favorable to the defense—was it exculpatory or valuable for impeachment purposes. *United States v. Douglas,* 874 F.2d 1145, 1163–64 (7th Cir.1989). The allegations against Officer Doe involve his allegedly taking money allocated to government informants, lying on search warrant applications concerning the identity of informants and their testimony and stealing money found during police searches. The allegations are unquestionably serious and of value for impeachment purposes. In fact, the United States Attorney's Office considered the allegations serious enough to investigate Doe for approximately four years. It was not until April of 1994 that the Milwaukee United States Attorney's Office recommended to the Attorney General that prosecution of Officer Doe be declined based upon insufficient evidence of wrongdoing.

█ The court must next determine whether the evidence was actually suppressed by the prosecution. The government admits it was aware of certain allegations against Doe as early as July of 1990 and that it began its investigation of Doe shortly thereafter. Approximately one year later in July of 1991, the Assistant United States Attorney assigned to the investigation learned that Doe had been working with the DEA Task Force since March of 1990. The United States Attorney's office then realized it was investigating a police officer who was working on many cases being prosecuted by the Office and who would likely be an important witness for the prosecution.

Contrary to the routine practice of the United States Attorney's Office[5] and to the discovery procedures set forth in Local Criminal Rule 2.04,[6] the government did not disclose the allegations against Doe but instead transferred the investigation to the Milwaukee Office. See also *United States v. Eley*, 335 F.Supp. 353, 356–57 (N.D.Ga.1972) ("Under the procedure this court will adopt [referring to Rule 2.04 of the Local Criminal Rules for the United States District Court for the Northern District of Illinois], the accused will be permitted, upon request, to inspect and copy any information in the possession of the prosecution which might be helpful to his case. If the prosecution entertains a genuine doubt as to the applicability of *Brady* to a particular piece of information . . ., it may so inform the accused. The accused will have the option of letting the matter rest or pursuing pretrial discovery of the particular information through a formal motion to this court. The court will then order the prosecution to submit the information in question for in camera inspection and proceed to adjudicate the controversy.")

Although the government admits it did not disclose the allegations against Doe,[7] evidence is not considered suppressed under *Brady* if the defendant could have obtained the evidence himself or discovered its existence with reasonable diligence. *Dimas* at 1019, citing *United States v. White*, 970 F.2d 328, 337 (7th Cir.1992). The government, however, makes no such argument that defendant could have obtained or discovered this evidence with due diligence. In fact, it seems unlikely that defendant could have discovered the evidence when Doe himself did not know of the allegations or investigation at the time of trial.

■ Since the evidence was suppressed, the court must determine whether the evidence was material under *Brady*. In making this determination, the court must decide whether the evidence would have been admissible at the suppression hearing and at trial. As the Seventh Circuit discussed in *Dimas* at 1019, determinations concerning the admissibility of this evidence should focus on Rule 608(b). Rule 608(b) of the Federal Rules of Evidence provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of

**5.** The government set forth its policy and practice concerning discovery in criminal trials in its response to the motion for a new trial at page 3:
   The routine practice of the United States Attorney's Office is to disclose to the Court or to the defense prior to trial potentially impeaching information concerning a witness, even if the information is inadmissible. The government then moves to limit the use of that evidence after disclosure as appropriate.

**6.** Local Criminal Rule 2.04 provides:
   (A) Within five (5) days after the arraignment the United States Attorney and the defendant's attorney shall confer.
   (1) Upon the request of the defendant's attorney, the government shall:

   (f) Permit defendant's attorney to inspect, copy or photograph any evidence favorable to the defendant;
   (B) If in the judgment of the United States Attorney or of the defendant's attorney, it would not be in the interests of justice to make any one or more disclosures set forth in A of this Rule requested by counsel, disclosure may be declined. A declination of any requested disclosures shall be in writing, directed to opposing counsel. The declination shall be signed personally by the

United States Attorney or the First Assistant United States Attorney or defendant's counsel, as appropriate, and shall specify the types of disclosures that are declined. . . .
   (C) In the event that either party thereafter moves for additional discovery or inspection, his/her motion shall be filed . . . [and] contain:

   (4) the statement that agreement could not be reached concerning the discovery or inspection that is the subject of defendant's motion.
   (D) Any duty of disclosure and discovery set forth in this Rule is a continuing one and the United States Attorney and defendant's attorney shall produce any additional relevant information gained by either of them.

**7.** The trial Assistants are clearly not at fault for the lack of disclosure in this case. The Doe information was withheld from them by their superiors in the United States Attorney's Office until approximately a year after the trial concluded. The trial Assistants' lack of knowledge is irrelevant to our analysis of the motion for a new trial, however, as knowledge of *Brady* material is imputed to prosecutors in the same office. *Dimas*, 3 F.3d 1015, 1018 n. 1, citing *Giglio*, 405 U.S. at 154, 92 S.Ct. at 766.

the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

FRE 608(b). Rule 608(b) allows cross-examination on specific instances of conduct which are probative of a witness' character for truthfulness or untruthfulness but precludes impeachment by extrinsic evidence. The cross-examiner must take the witness' answer as given and cannot contradict a denial either by confronting the witness with extrinsic evidence or proving the matter with such evidence. See *United States v. Abel*, 469 U.S. 45, 55, 105 S.Ct. 465, 470, 83 L.Ed.2d 450 (1984) (Rule 608(b) limits the inquiry to cross-examination of the witness and prohibits the cross-examiner from introducing extrinsic evidence of the witness' past conduct); *United States v. DiPaolo*, 804 F.2d 225, 230 (2d Cir.1986).

Rule 608(b), however, does not preclude use of extrinsic evidence where it is properly offered to show bias. See *United States v. Schwab*, 886 F.2d 509, 511 (2d Cir.1989). Evidence that a government witness has a bias in favor of the government is always permissible cross-examination and, if denied by the witness, may be proven by extrinsic evidence. See *United States v. Boyd*, 833 F.Supp. 1277, 1360 (N.D.Ill.1993), citing *United States v. Abel*, 469 U.S. 45, 52, 105 S.Ct. 465, 469, 83 L.Ed.2d 450 (1984); *United States v. Frankenthal*, 582 F.2d 1102, 1106 (7th Cir.1978).

In *Boyd*, the district court determined that the undisclosed evidence of post-incarceration drug use by certain El Rukn cooperating witnesses would have been admissible to establish bias. The court explained that a jury could infer bias where the government was aware of the witnesses' illegal drug use but still allowed the witnesses to continue using drugs at the Metropolitan Correctional Cen-

ter without significant risk of detention or punishment:

> When coupled with evidence of undisclosed benefits conferred upon the El Rukn cooperating witnesses by the government, some of which directly facilitated the post-incarceration drug use, a reasonable jury could infer that the government's failure to stop such drug use and to ensure its witnesses were disciplined for the same was motivated by a desire to both curry favor with these witnesses and preserve their credibility. With such a foundation, the suppressed evidence could have been used to subject Harris and Evans' credibility to serious question.

*Id.* at 1360–61.

Here, Officer Doe testified [8] that he did not know the government was investigating him at the time of the Veras trial. Because Doe had no knowledge of the government's investigation, no argument can be made that he was biased by fear or self-interest to alter his testimony at trial. In addition, because the government did not confer any undisclosed benefits upon him as in the El Rukn cases, no argument can be made that the government was trying to curry favor with Doe in exchange for his testimony.

Given Officer Doe's denial of each and every allegation at the hearing, the court would not have changed its ruling denying the motion to suppress. The outcome of the trial would also have not been affected. In light of Doe's denials, defense counsel would have been unable to elicit any admissible evidence, much less material evidence, impacting on Doe's credibility. Rule 608(b) would have precluded defense counsel from impeaching Doe with extrinsic evidence supporting the Canezaro allegations. Any such extrinsic evidence would also have been inadmissible to show bias. Defense counsel would have been prevented from arguing the impermissible inference created by the mere asking of accusatory questions relating to Doe's alleged misconduct. Because the suppressed evidence would not have affected the outcome of the suppression hearing or the

---

**8.** Officer Doe did not assert his Fifth Amendment privilege against self-incrimination at the hearing

on the motion for a new trial.

trial, defendant's due process rights were not violated and his motion for a new trial pursuant to *Brady* and *Giglio* is denied.

■ The Seventh Circuit limits this court's *Brady* analysis to the effect of the allegations which the government knew and failed to disclose at trial. Evidence discovered after trial such as the testimony of the confidential informant who provided information for both the Canezaro and Fusco search warrants is irrelevant to a motion for a new trial under *Brady*. The *Dimas* Court explained: "[L]ater developments in the investigation, if any, are irrelevant because the question is whether the result would have changed if the prosecutors disclosed the evidence at the time, not whether the outcome would differ if the case were tried today." *Dimas* at 1019 n. 3.

■ The confidential informant's post-trial testimony is relevant only to Veras' claim of newly discovered evidence. To obtain a new trial on the basis of newly discovered evidence, the defense must show that the evidence: (1) came to his knowledge only after the trial; (2) could not have been discovered sooner through the exercise of due diligence; (3) is material, and not merely impeaching or cumulative; and (4) would probably result in an acquittal in the event of a new trial. See *United States v. Oliver*, 683 F.2d 224, 228 (7th Cir.1982).

Without reiterating its prior analysis, the court determines that defendant cannot meet the third and fourth elements of this test. Defendant cannot show that the evidence is material or would result in an acquittal in the event of a new trial given defense counsel's limited ability to cross-examine Doe under Rule 608(b) as well as the strength of the evidence in this case. Defendant's motion for a new trial on the basis of newly discovered evidence is denied.

ORDERED: Defendant Dickson Veras's motion for a new trial is denied.