**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Cary Bernard WILLIS, Defendant–**
**Appellant.**

No. 94–1228.

United States Court of Appeals,
Seventh Circuit.

Argued June 2, 1994.

Decided Sept. 30, 1994.

Thomas Edward Leggans, Office of U.S. Atty., Crim. Div., Fairview Heights, IL (argued), for plaintiff-appellee.

Phillip J. Kavanaugh, Office of Federal Public Defender, East St. Louis, IL (argued), for defendant-appellant.

Before FAIRCHILD, FLAUM, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Cary Bernard Willis was charged in a four count indictment with the following offenses: Count I—possession with intent to distribute 2.6 grams of cocaine base; Count II—using or carrying a firearm during and in relation to a drug trafficking offense; Count III—possession of cocaine within one thousand

feet of a school; and Count IV—possession of a firearm within one thousand feet of a school.

Willis moved to suppress evidence of the weapon and the cocaine base police found in his automobile. The district court denied his motion. Willis then entered into a conditional guilty plea pursuant to Fed.R.Crim.P. 11(a)(2), which reserves to him the right to appeal the denial of his suppression motion and withdraw his guilty plea should he prevail. According to his plea agreement, Willis conditionally pled guilty to Counts I and II, and the government dismissed Counts III and IV. Willis now appeals the district court's denial of his motion to suppress.

## FACTS

At 9:30 on August 19, 1992, police officer Ken Berry was on patrol in the vicinity of the Morrison School in East St. Louis, Illinois. He heard the radio dispatcher direct another officer to the Morrison School in response to a complaint that a gang of youths were breaking bottles and causing a disturbance on school grounds. Berry advised the dispatcher that he was in the area of the school and would assist the other officer on the call. When he arrived, Berry saw a group of approximately twenty people gathered in the school parking lot. Officer Berry recognized individuals in the group as known drug dealers and car thieves.

Berry also observed a blue Pontiac in the parking lot and saw Willis sitting in the driver's seat of the car. Berry recognized Willis from prior drug encounters. Berry watched Willis duck down in the seat, sneak out of the car, and creep along the driver's side. Willis emerged at the rear of the car on the passenger's side. Berry testified that he thought that Willis was either trying to hide contraband or flee. Berry approached Willis and asked him what he was doing. Willis replied that he was changing a tire.

Other officers arrived at the scene and ordered the group to stand against the school wall while the officers ran a warrant check on the group members. (It turned out none of the group had an outstanding warrant). Berry conducted a pat down search of Willis, then ordered him to stand against the wall with the others. While the warrant check was being conducted, Berry walked over to Willis' car. Willis had left the driver's side door open. Berry shined his flashlight into the car through the open door and saw a metallic glint in the light. Berry crouched near the ground, shined his flashlight on the glint, and saw a silver .45 caliber automatic resting on the center console below the dashboard, partially obscured by heat ducts.

Berry arrested Willis for "possession of a gun." [1] After the arrest, Berry removed the gun from the car and began an "inventory search" of the car according to police department policy. As part of this inventory search, Berry searched the dashboard of the car, which housed a removable radio. Berry had received "recent drug intelligence" that drug dealers were storing drugs inside removable car radios. He pulled Willis' car radio out from the dashboard, noticed that some of the screws were missing, and decided to investigate closer. Upon peering through the holes in the radio casing, Berry saw that there was a plastic bag inside. He shook the radio and heard loose objects in it. Berry opened the top cover of the radio casing, which was attached by a hinge to the rest of the casing, and found three baggies of crack cocaine inside. Berry informed Willis that he was also under arrest for cocaine possession and transported him to the police station.

## ANALYSIS

*Seizure of Gun*

Willis argues on appeal that the police impermissibly seized the gun they retrieved from his vehicle. The district court articulated multiple grounds upon which it justified Officer Berry's search.

■ We only need discuss one of them here. We review a district court's factual and legal determinations on a motion to suppress evidence for clear error. *United States v. Rice*, 995 F.2d 719, 722 (7th Cir.

---

1. The record does not indicate the exact weapons offense for which Willis was arrested. Willis, however, was eventually charged with possession of a firearm within one thousand feet of a school.

1993); *United States v. Wilson,* 2 F.3d 226, 229 (7th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 1615, 128 L.Ed.2d 341 (1994). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Rice,* 995 F.2d at 722 (citations omitted).

■ The plain view doctrine is an exception to the warrant requirement. The doctrine allows a police officer to conduct warrantless seizures of private possessions when (1) the officer has not violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed; (2) the incriminating character of the evidence is "immediately apparent"; and (3) the officer has a lawful right of access to the object itself. *Horton v. California,* 496 U.S. 128, 142, 110 S.Ct. 2301, 2311, 110 L.Ed.2d 112 (1990); *see also Wilson,* 2 F.3d at 232.

■ Here, Berry conducted a legitimate investigatory stop of Willis. Under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), an officer is authorized to make an investigatory stop not amounting to an arrest if he is "able to point to specific and articulable facts" that give rise to a reasonable suspicion of criminal activity. *Id.* at 21–22, 88 S.Ct. at 1879–80; *United States v. Tilmon,* 19 F.3d 1221, 1224 (7th Cir.1994). Berry responded to a complaint that a large group of people were causing a disturbance in a schoolyard. When he arrived at the school, a crowd was indeed gathered in the school parking lot, and Berry recognized Willis as a person who had been involved in previous drug encounters. Finally, Berry observed Willis making suspicious movements inside and around his vehicle. Berry stated that he thought Willis was trying to hide contraband or flee. Ample facts existed for Berry to reasonably suspect that criminal activity was afoot when he approached Willis.

■ It would not have mattered, however, even if Berry's initial stop of Willis was somehow unjustified, because Berry did not need to rely on the investigative stop to attain the position from which he plainly viewed the gun. Willis' car was already parked in the school parking lot, subject to observation by anyone who cared to look. Furthermore, when Willis slid out of the car before Berry confronted him, he left the driver's side door open. Thus, merely by approaching the vehicle, Berry was in a legitimate position to view plainly, through the open door, the initial metallic glint from the gun.

Berry's use of a flashlight and his subsequent crouching on the ground in order to get a better look were also permissible. *Texas v. Brown,* 460 U.S. 730, 739–40, 103 S.Ct. 1535, 1542, 75 L.Ed.2d 502 (1983) ("There is no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers."). From his lawful position, Berry was able to discern that the metallic glint came from the exposed barrel of a gun. Thus, Berry met the first requirement of the plain view exception.

Next, Berry was aware that Willis and his car were directly on school grounds. Under 18 U.S.C. § 922(q)(1), it is unlawful for Willis to possess a firearm in a school zone. We recognize that the incriminating nature of a gun found partially hidden on the forward part of the console underneath the dashboard may be apparent in itself. Possession of that same gun on school property, however, also constitutes a federal crime. Berry could determine that Willis had probably violated the law as soon as he identified the glint as a handgun. Hence, we conclude that the incriminating character of the gun in Willis' car was immediately apparent.

Finally, because possession of a firearm in a school zone is a federal crime, Berry would have had probable cause, and thus a legal right, to search Willis' car and seize the gun. *See, United States v. Cooper,* 19 F.3d 1154, 1163 (7th Cir.1994). According to Berry's testimony, however, he secured the gun only after he had arrested Willis on the weapon offense. Thus, Berry did not need probable cause to search the vehicle because incident to the arrest he was independently entitled to search the passenger compartment of the car for weapons and to seize the gun. *See New York v. Belton,* 453 U.S. 454, 101 S.Ct.

2860, 69 L.Ed.2d 768 (1981); *United States v. Arango,* 879 F.2d 1501 (7th Cir.1989), *cert. denied,* 493 U.S. 1069, 110 S.Ct. 1111, 107 L.Ed.2d 1019 (1990).

Berry's seizure of the gun was authorized by the plain view doctrine. Therefore, we conclude that the district court committed no error in denying his motion to suppress evidence of the gun.

*Seizure of Cocaine*

Willis also argues that the district court erred in refusing to suppress evidence of the crack cocaine that Officer Berry found in Willis' removable radio. The district court held that, under *New York v. Belton,* once an arrest of the occupant of a vehicle occurs, "an officer may search the passenger compartment [of the car], including any containers therein as part of a protective search." The court explained that Willis' removable radio was an "object capable of holding another object" and therefore fit the definition of "container" espoused in *Belton. See* 453 U.S. at 460 n. 4, 101 S.Ct. at 2864 n. 4.

Willis does not take issue with the district court's determination that the radio casing was properly considered a "container" searchable incident to arrest. Instead, Willis contends only that, at the time of his arrest, he was not an "occupant" of the vehicle and that Berry's search of the radio was not "contemporaneous" with the arrest. To support his arguments, Willis points out that he was arrested outside of the vehicle. He states that because he was placed handcuffed in the back of a squad car, at the time of the search he was "not capable of lunging or grabbing for anything." Further, he indicates that, by the time the search occurred, he had already been handcuffed and placed in the police car for "some time." Thus, he concludes, no warrantless search of the passenger compartment was permissible.

Willis' contentions are without merit. First, we do not fully comprehend the basis upon which Willis argues that he was not an "occupant" of the vehicle. In *United States v. Karlin,* 852 F.2d 968 (7th Cir.1988), *cert. denied,* 489 U.S. 1021, 109 S.Ct. 1142, 103 L.Ed.2d 202 (1989), we stated that "[i]t seems quite likely that, in instances where occupants of a car are arrested, they will be outside the car and will have been placed under some measure of security before the car is searched." *Id.* at 970–71. More recently, in *United States v. Adams,* 26 F.3d 702 (7th Cir.1994), we noted that, in previous cases, we have considered an arrestee an occupant of a vehicle "even if he was not an occupant of the car at the moment of arrest" so long as he "had been an occupant of the searched car immediately prior to the search." *Id.* at 705 (citing cases).

■ Moreover, in *Arango,* 879 F.2d at 1501, we upheld an automobile search incident to arrest where the suspect was arrested a block away from the vehicle for an offense unrelated to the vehicle itself, and was brought back to the vicinity of the vehicle by the police. In this case, Berry saw Willis sitting inside the car and then squatting at the rear of the car. Berry approached Willis because of his furtive behavior in and around the automobile. Willis was arrested in an area immediately next to the vehicle and was secured in a squad car near the vehicle. Even his arrest was for an offense directly related to his occupancy of the vehicle. Willis' arrest was far more closely connected to the vehicle than the arrest in *Arango.* There is no question that, for the purposes of a search incident to arrest, Willis was an occupant of the vehicle.

■ Next, we have also held that officers may conduct valid searches incident to arrest even when the officers have secured the suspects in a squad car and rendered them unable to reach any weapon or destroy evidence. *Karlin,* 852 F.2d at 970. In *Karlin,* we held that an officer could search any area "into which [the arrestee] might have reached at the time of arrest." *Id.* at 972. Here, at the time of his arrest, both Willis and the vehicle were near the school building. One car door stood wide open. There were also many individuals who were congregated in the schoolyard near the vehicle. It was certainly reasonable for the police to have believed that Willis or others could possibly gain access to a weapon or destroy evidence in the vehicle at the time of Willis' arrest, and the district court did not clearly err in finding so. Thus, Officer Berry's search was permissible notwithstanding Willis' confinement to the squad car.

■ Finally, Willis is correct that a search incident to arrest must be contemporaneous with that arrest to be valid. *See, e.g., United States v. Queen,* 847 F.2d 346, 352–53 (7th Cir.1988). However, in this case, we find no indication that an inordinate amount of time elapsed between Willis' arrest and the execution of the search. Officer Berry testified that, after he had secured Willis, he immediately went back to the vehicle to take a picture of the position of the gun. He walked to his squad car to look for a camera, but could not find one. He then returned to the vehicle with a towing slip, retrieved the gun, and began to inventory the items in Willis' car pursuant to an impoundment of the vehicle when he came across the crack cocaine.[2]

■ We do not believe the requirement that a search incident to arrest be "contemporaneous" with the arrest means that an officer is forbidden to undertake any intervening act at all between arrest and search. *Cf. United States v. Fiala,* 929 F.2d 285, 288 (7th Cir.1991) (holding a search incident to arrest valid where troopers detained arrestee for an hour and a half awaiting arrival of drug-sniffing dogs to conduct search). In this case, Berry commenced the search of Willis' car shortly after he had secured Willis and well before Willis was transported to the police station. We conclude that the search was close enough in time to the arrest to be considered "contemporaneous" with it.

The district court did not commit clear error in determining that Berry conducted a valid search of Willis' car as an incident to arrest. Thus, Willis' motion to suppress evidence of the cocaine was properly denied.

## CONCLUSION

For the foregoing reasons, the district court's denial of Willis' motion to suppress is AFFIRMED.

---

2. Neither the district court nor the government attempt to justify Berry's seizure of the crack cocaine as resulting from an "inevitable discovery" during the course of a valid inventory search. Hence, we do not discuss it here.