**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Dickson VERAS, Defendant–Appellant.**

**Nos. 92–3044, 94–2383.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 14, 1995.

Decided April 17, 1995.

Rehearing Denied June 21, 1995.

David S. Rosenbloom (argued), Barry Rand Elden, Asst. U.S. Attys., Ronald D. May, Office of U.S. Atty., Criminal Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Edward X. Clinton, Sr. (argued), Chicago, IL, for defendant-appellant.

Before WOOD, Jr., COFFEY, and KANNE, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

On January 23, 1992, Dickson Veras was convicted in a jury trial of conspiring to distribute ten kilograms of cocaine in violation of 21 U.S.C. § 846, possessing ten kilograms of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and possessing a firearm in the course of a drug offense in violation of 18 U.S.C. § 924(c). Three co-defendants, Alejandro Almonte, Arturo Fernandez, and Santiago Cuesta, were also indicted. Almonte and Fernandez pled guilty and were sentenced. On the government's motion, charges against Cuesta were dismissed. On April 30, 1992, the defendant was sentenced to twenty-five years imprisonment. Veras brings two appeals: the first of his conviction, and the second of the denial of his motion for a new trial based on information from the government following the trial. Because we find the district court was correct in denying both motions, we affirm.

In June 1991, Drug Enforcement Task Agents [DEA] began conducting surveillance on the house of Alejandro Almonte in Chicago, Illinois. Almonte was the initial target of the investigation that began as a result of information from a confidential informant who reported Almonte was receiving shipments of cocaine from New York. Between June 5 and June 10, DEA Task Force Agent Granias and other agents surveilled Almonte's home and various locations where he traveled. On June 11, Almonte suspected he was being watched. The agents determined that Almonte was conducting counter-surveillance and returned to Almonte's house to await his return.

Almonte returned around noon. A short time later, Almonte and Veras walked into Almonte's garage which opened onto an alley behind Almonte's home. Officer Granias and another DEA agent watched from the alley. A white Oldsmobile Delta '88 was backed part way out of the garage. Veras stood next to the vehicle holding a box and making motions with the box towards Fernandez, who was kneeling inside the car towards the back window. Fernandez appeared to be taking objects from the defendant and placing these objects in the back seat area. Granias could not see what the defendants were loading. Officer Granias went back to his car and followed Veras, Fernandez, and Cuesta, who left in the Oldsmobile. Almonte left in a blue van. Although Almonte had been the initial target of the investigation, the officers followed the Oldsmobile because of the previous loading they observed.

The defendants eventually stopped in the parking lot of a motel. After about a minute, Officer Granias approached the driver's side of the vehicle as Officer Hodge walked towards the passenger side. Veras was in the driver's seat with Fernandez sitting next to him and Cuesta in the back seat. As Officer Granias peered into the vehicle, he spotted the barrel of a revolver located by Fernandez's feet on the floor of the car. The officer alerted Officer Hodge that there was a gun and ordered the defendants out of the car. Officer Hodge then reached in and pulled a loaded .38 caliber Smith & Wesson revolver from the floor of the car.

Officer Granias and the other DEA agents proceeded to search Veras's car. Granias began to search the back seat area because of the loading he had observed earlier. Built into the deck between the back seat and the rear window was a covered compartment. Officer Granias went around to the trunk to see if he could tell how the compartment was constructed. In the meantime, another agent opened the compartment and found ten kilograms of cocaine. Veras was charged and convicted of conspiring and possessing cocaine with intent to distribute and possessing a firearm in connection with a drug offense. Veras now appeals his conviction.

## I. Right to Counsel

As a part of the defendant's challenge to the court's denial of the motion to suppress,

Veras first argues he was denied his constitutional right to counsel at a critical stage. The defendant contends that as a result of this denial, evidence that may have been otherwise suppressed was not. The government counters by arguing that Veras was only unrepresented during a brief pretrial stage of the proceeding before any action of consequence happened in the case.

The time period in which Veras alleges he was unrepresented was between October 30, 1991, and December 3, 1991. Attorney Joseph Hartzler represented Veras until he left to accept a position in the United States Attorney's Office. Prior to withdrawing, Hartzler filed a motion to suppress evidence on Veras's behalf. On October 30, 1991, Hartzler filed a motion to withdraw as court-appointed counsel and to extend the time to file a reply to the government's response to the motion to suppress. The district court granted the extension. Hartzler prepared a reply brief before leaving, and John Cutrone, a federal public defender, filed that brief, but did not file his own appearance. On December 3, 1991, attorney Carlos Vasquez filed an appearance as counsel for the defendant. A status hearing was held and Vasquez appeared on behalf of the defendant. At the hearing, the court emphasized that none of the pretrial motions had been ruled upon. Vasquez requested a hearing on the previously filed motion to suppress. A schedule was set and counsel agreed to submit supplemental briefs. Counsel was given nine days to submit these additional briefs. Vasquez chose not to submit anything further. The district court denied the defendant's motion to suppress.

■ The Sixth Amendment guarantees the right to counsel during all "critical stages of the prosecution." *United States v. Wade,* 388 U.S. 218, 238, 87 S.Ct. 1926, 1938, 18 L.Ed.2d 1149 (1967). In *Wade,* the Court noted that it was not enough for a defendant to allege the event was critical and may have led ultimately to his conviction; rather the defendant must prove that at the time it was conducted, the procedure was a "critical stage of the prosecution." *Id.* at 237, 87 S.Ct. at 1937. The right attaches upon the commencement of adversarial proceedings and applies to only the critical stages where "absence of defense counsel or lack of advice may derogate from the accused's right to a fair trial." *United States v. Jackson,* 886 F.2d 838, 843 (7th Cir.1989).

■ Veras alleges that the lack in his representation was during a critical period and consequently led to the district court's denial of his motion to suppress. After an examination of the record, it is clear Veras was not prejudiced by the withdrawal of his first attorney or the failure of his second attorney to file an appearance. Although the period involved may be deemed a "critical" stage of the proceeding, because there were no adverse consequences resulting, there is no error. During that time period, the district court had not ruled on any of the preliminary motions, and the defendant had not waived any of his rights. Hartzler, the first attorney, had prepared a reply brief for Veras which was filed by the public defender attorney. After the retained attorney appeared, the district court granted Vasquez an opportunity to file a supplemental brief. Vasquez did not do so or complain to the court that Veras had not previously been properly represented. Viewed against this background, it cannot be said Veras was denied the right of counsel during a time period in which any of his rights were substantially affected. Failure of the public defender to file an appearance did not, as a preliminary matter, result in the defendant not being represented. Veras had three attorneys to cover the questionable time period, Hartzler, Cutrone, and Vasquez. No breach in representation is apparent in the record. In any event, no harm resulted for which the defendant can now complain.[1]

## II. Motion to Suppress

Veras contends that the district court erred in not granting him a full hearing on

---

1. Veras also alleges that he was denied his right to counsel under Rule 44(a) of the Federal Rules of Criminal Procedure. The defendant argues that this Rule requires representation at every stage, not just critical stages. Whether the challenge falls under the Sixth Amendment or Rule 44(a), the result in this case is the same.

his motion to suppress. The defendant alleges the limited hearing that was granted denied him the opportunity to have certain factual issues determined prior to trial. Specifically, he alleges that whether the gun on the floor of the car was in a paper bag or not was an issue central to his case. Veras contends that if the gun was not in plain view, the subsequent search of the car would have been illegal under the Fourth Amendment.

Because the basis of the defendant's motion to suppress has changed and been renewed several times through the course of the proceedings, a summary review of the relevant facts is necessary. The defendant's original motion to suppress was filed in July 1991. The defendant did not mention the issue of whether the gun was in plain view, but argued that the observation of the gun in the car did not provide probable cause. The government responded that the search of the automobile was permitted without a warrant, both as a search incident to arrest and because there was probable cause to search the vehicle. The district court denied the defendant's motion to suppress on the grounds that the search was incident to a lawful arrest for which there was probable cause.

The day before jury selection began, the defendant alleged that the co-defendant, Fernandez, who had pled guilty, advised the government that the gun was in a paper bag at the time of the arrest.[2] The defendant sought to renew his motion to suppress and requested a full evidentiary hearing on whether the gun was in plain view. The district court granted Veras a hearing on the single factual issue of whether the gun found was in a paper bag at the time the officers approached Veras's car. Fernandez and Officer Granias were both called as witnesses. Agent Granias testified that when he asked Fernandez about the gun, Fernandez stated that Veras handed him the gun in a bag, but he took it out of the bag before stashing the gun underneath the car seat. Fernandez elaborated, explaining that the gun was initially in a bag, but that he removed it from the bag, put it first in his shirt, but then finally underneath the seat in Veras's car.

On the basis of this testimony, the court denied Veras's motion to suppress.

Veras's attorney requested to file an additional motion to quash the arrest and suppress the evidence. His lawyer wanted to put Veras on the stand to verify the motion. The court allowed this last minute request and Veras testified. The district court found Veras's testimony to be contradictory and accordingly discredited it. Veras testified he saw an officer find the gun during the search of the car and not before as Officer Granias and Fernandez testified. Veras, however, later admitted he does not understand English and was not in a position to see the gun being removed. After a full hearing, the district court denied the motion to suppress on the basis that the evidence showed the gun was in plain view.

■■■ When a district court grants a hearing on the motion to suppress and makes a finding, the court will review the district court's decision for a clear error. *United States v. Willis*, 37 F.3d 313, 315 (7th Cir. 1994). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with the definite and firm conviction a mistake has been committed. *United States v. Rice*, 995 F.2d 719, 722 (7th Cir.1993). The court "will not retry issues of fact or substitute the district court's judgment with respect to such issues if the factual findings are amply supported by the record." *United States v. Packer*, 15 F.3d 654, 656 (7th Cir.1994) (citing *United States v. Adebayo*, 985 F.2d 1333, 1337 (7th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 2947, 124 L.Ed.2d 695 (1993)). Therefore, if the district court finds the testimony of one witness more credible than that of another witness and it is supported in the record, there can be no clear error. *See Packer*, 15 F.3d at 656–57; *United States v. Cardona–Rivera*, 904 F.2d 1149, 1152–53 (7th Cir.1990); *United States v. D'Antoni*, 856 F.2d 975, 978–79 (7th Cir.1988).

■■■ The district court essentially determined a credibility issue between the testimony of the co-defendant and the officer, and that of the defendant. On the basis of this

---

2. Veras's counsel claims to have heard this information from another co-defendant's lawyer.

testimony, the district court found the testimony of Fernandez and Officer Granias to be more credible than Veras's recollections of the events. The trial judge's choice of whom to believe is conclusive on appeal unless the judge has credited *exceedingly* improbable testimony. *Cardona–Rivera,* 904 F.2d at 1152. The officer's and co-defendant's recollections are substantially similar. It is only the defendant's rendition of the story that varies from the other testimony. The district court was in the best position to determine the credibility of the witnesses and found the defendant's testimony was contradictory. Being that there is no clear error, Veras's motion to suppress the cocaine seized in his car was properly denied.

### III. Search of Defendant's Vehicle

Veras also contends that the search of his car was unreasonable as a search incident to arrest because the officers exceeded the scope of the search by prying open the trap compartment located in the back seat.[3] The government argues that the search of the vehicle was a lawful search because the covered compartment was part of the "passenger compartment" within the confines of *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), and the officers' prior observations of the vehicle being loaded.

The "cardinal principle" in Fourth Amendment search and seizure jurisprudence is that "searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specially established and well-delineated exceptions." *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978) (quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)). A search performed incident to an arrest, however, is one of the well-established exceptions to warrantless searches. *United States v. Graham,* 638 F.2d 1111, 1114 (7th Cir.), *cert. denied,* 450

U.S. 1034, 101 S.Ct. 1748, 68 L.Ed.2d 231 (1981). Government agents may conduct a limited search incident to arrest in the immediate area surrounding the arrestee. *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969). The exception was expanded to include the passenger compartment of automobiles as a contemporaneous incident of that arrest. *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981). Such a search will be lawful so long as it is contemporaneous with the arrest, conducted to prevent the seizure of a weapon or destruction of evidence, and limited to an area within the arrestee's control. *United States v. Edwards,* 885 F.2d 377, 383 (7th Cir.1989) (quoting *United States v. Queen,* 847 F.2d 346, 352 (7th Cir.1988)).

The search followed Veras's arrest and was limited in scope to the arrestees' area of control. Santiago Cuesta was seated in the back seat of the car at the time of the arrest. Since the compartment would have been within Cuesta's reach, the officers were justified in searching the back seat area. The only issue is whether the secret compartment in the back seat constitutes a "passenger compartment" of the automobile, and therefore a searchable area incident to the defendants' arrest.

The permissible scope of an automobile search includes the "passenger compartment" and any containers found therein. *Belton,* 453 U.S. at 460–61, 101 S.Ct. at 2864. Courts have interpreted the "passenger compartment" requirement broadly in order to effectuate its purpose of protecting police officers and citizens from defendants reaching for a weapon or destroying evidence. *See United States v. Arango,* 879 F.2d 1501, 1505 (7th Cir.1989); *see also United States v. Thompson,* 906 F.2d 1292, 1298 (8th Cir. 1990) (holding that "passenger compartment is interpreted broadly by most courts and generally includes whatever area is within a passenger's reach").[4] In a similar case, we

---

3. Veras also contends that there was no probable cause for the agents to search the automobile. Because, however, we find that the search was incident to a lawful arrest, we need not reach this issue.

4. *See e.g., Willis,* 37 F.3d at 316 (finding the removable stereo a passenger compartment within the vehicle); *United States v. Chapman,* 954 F.2d 1352, 1358 and n. 1 (7th Cir.1992) (holding the rear area of a truck and duffle bag found

held that the officer's search of the inside of a removable stereo casing was proper as a search incident to arrest. *Willis*, 37 F.3d at 317. The district court found that the removable stereo was a "container" under *Belton* because it was an object capable of holding another object. *Id.* In *Willis*, the officer was observing the defendant in a school parking lot when the metallic glint of a gun caught the officer's attention. *Id.* Willis was arrested for possession of the gun, and the officer searched the defendant's car. *Id.* Based on prior information that drug dealers were storing narcotics inside car radios, the officer peered into the defendant's stereo. *Id.* The officer spotted three plastic bags containing crack cocaine. *Id.* The *Willis* decision is similar to Veras's case. The cocaine Veras was carrying was also located in a hidden compartment and Officer Granias had previously observed the defendants loading something into the back seat area where the compartment was located. We find that this secret compartment located in the back seat of Veras's car was part of the "passenger compartment" and therefore a permissible area for the officers to search. The district court did not commit clear error when it denied Veras's motion to suppress and admitted the cocaine into evidence.

## IV. Veras's Motion for a New Trial

Following Veras's conviction, the district court denied the defendant's motion for a new trial, the subject of an additional appeal. *United States v. Veras*, 860 F.Supp. 471 (N.D.Ill.1994). Veras's motion was based on the government's failure to disclose prior to trial the allegations of wrongdoing by one of its primary witnesses allegedly in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).[5] The defendant asserts

that because Officer Granias himself was under investigation, his credibility was at issue, and therefore the information about that investigation should have been disclosed.

In December 1992, approximately one year after Veras's trial, the Assistant United States Attorneys who tried this case were informed by a supervisor that an investigation was pending involving allegations against Officer Granias. In February 1993, when the information had become available to them, the Assistant United States Attorneys sent a letter to defense counsel informing them of this investigation concerning Officer Granias. The letter stated an informant had claimed that he had not provided search warrant information on as many occasions as was indicated in police department records. It was alleged that in two specific warrants, dated April and June 1989, false information had been provided. One of these warrants involved a defendant name Canezaro, who had been convicted of several felony offenses. The letter stated that Officer Granias, through his counsel, denied the allegations and would assert his privilege under the Fifth Amendment if subjected to questioning on these topics.

Because this issue involves a different set of facts from the ones previously discussed, it is necessary to summarize the procedural history of the investigation. In July 1990, an agent from the public integrity squad and an Assistant United States Attorney from the Criminal Division of the Chicago Office formally interviewed Canezaro regarding the allegations he made during his probation revocation hearing. Canezaro had alleged that Granias was one of several officers who failed to inventory $15,000 in cash that was taken during the search of his home. Following this interview, the FBI for approximately a year questioned other individuals who had

therein functioned as a passenger compartment of the vehicle); *see also United States v. Pino*, 855 F.2d 357, 364 (6th Cir.1988), *cert. denied*, 493 U.S. 1090, 110 S.Ct. 1160, 107 L.Ed.2d 1063 (1990) (holding the rear section of a mid-sized station wagon was a passenger compartment); *United States v. Russell*, 670 F.2d 323, 327 (D.C.Cir.), *cert. denied*, 457 U.S. 1108, 102 S.Ct. 2909, 73 L.Ed.2d 1317 (1982) (finding the hatchback of a car a passenger compartment).

5. Under *Brady*, it is a violation of due process to suppress favorable information that is material to either the accused's guilt or punishment. *Brady*, 373 U.S. at 87–88, 83 S.Ct. at 1197. Undisclosed evidence on the reliability of a key witness is also a violation of due process. *Giglio*, 405 U.S. at 154, 92 S.Ct. at 766.

been arrested by Officer Granias. As of July 1991, the FBI's investigation had not revealed any new or corroborating evidence, nothing but the claims of Canezaro.

Officer Granias had been on the DEA task force since March 1990 and working on cases being prosecuted by the Chicago Office. The Chicago Office then recused itself, and the matter was transferred to the United States Attorney's Office in Milwaukee. When the investigation was transferred, the Chicago Office considered whether it was necessary to make a *Brady* disclosure. The Office determined that there were no disclosure obligations required at that time for two reasons: (1) Granias was unaware of the investigation, and therefore could not be said to be trying to ingratiate himself to the United States Attorney's Office by providing favorable testimony; and (2) the allegations at that time consisted solely of the word of a convicted drug dealer and perjurer who had much to gain by fabricating the allegations. The government believed that in light of the fact there was no corroboration for the allegations, the charges appeared to be speculative and preliminary.

The government acknowledged that disclosure might be necessary after further investigation by the Milwaukee Office, and therefore asked that the Office inform them if corroborating evidence was revealed. In December 1992, after Veras had been convicted, the Chicago Office received word that corroborating evidence had been discovered. The evidence was the testimony of a confidential informant, who allegedly provided information for the Canezaro search. That information is what prompted the February 1993 letter to defense counsel. On April 27, 1993, Veras moved for a new trial under Federal Rule of Criminal Procedure 33 based upon "newly discovered evidence." Subsequent to this filing, Cook County Circuit Judge Toomin held a hearing on Canezaro's post-conviction petition. Officer Granias, Canezaro, and the informant all testified under oath at that hearing. Officer Granias denied each allegation of wrongdoing before Judge Toomin. Judge Toomin held that Canezaro had not proven by clear and convincing evidence that Officer Granias had perjured himself and denied Canezaro's petition.

An evidentiary hearing was held and, in its own thorough analysis, the district court reviewed Veras's motion for a new trial. The court initially determined that the evidence was favorable to Veras because of the seriousness in the allegations against Officer Granias. *Veras,* 860 F.Supp. at 476. The court also found that despite the government's insistence, the evidence was wrongfully suppressed. *Id.* at 477. Finding that favorable evidence was suppressed, the court proceeded to determine whether the evidence was material. *Id.* The court concluded that because Officer Granias denied each allegation and was not biased due to the fact he was unaware of the impending investigation at the time of Veras's trial, the ruling on the motion to suppress would not have changed. *Id.* at 478–79. Further, the court found the outcome of the trial would not have been affected. *Id.* Following the Seventh Circuit's *Brady* analysis in *United States v. Dimas,* 3 F.3d 1015 (1993), the court determined that under Rule 608(b) defense counsel would have been precluded from impeaching Officer Granias or showing bias with extrinsic evidence supporting the Canezaro allegations. *Id.* at 478. The district court found there had been no violation of Veras's due process rights. *Id.* at 478–79.

 It is within the sound discretion of the district court to decide whether a new trial should be granted. *United States v. Johnson,* 26 F.3d 669, 683 (7th Cir.1994); *United States v. Kaufmann,* 803 F.2d 289, 291 (7th Cir.1986). Because the trial judge is in a better position to evaluate the motion for a new trial, the standard of appellate review is a highly deferential one. *United States v. Morales,* 902 F.2d 604, 605 (7th Cir.1990). The heavy burden placed on the appellant in this type of motion has been repeatedly noted by this court. *See Kaufmann,* 803 F.2d at 291; *United States v. Davis,* 604 F.2d 474, 484 (7th Cir.1979).

Veras challenges the district court's determination on the grounds that it denied the defense its opportunity to make its own investigation into the credibility of Officer Granias. The government contends, without

conceding the evidence was suppressed, that the evidence withheld was not material to Veras's case. It argues that because the evidence would not have produced a different result in the outcome of the trial, it was not material.

The crux of the issue begins with *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in which the Supreme Court held that due process requires the prosecution to provide the defense, upon request, with any evidence favorable to the accused which is material either to guilt or punishment. *Id.* at 87–88, 83 S.Ct. at 1197. The Supreme Court subsequently held that the government's *Brady* obligation includes evidence affecting a government witness's credibility. *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). In *Giglio,* the petitioner filed a motion for a new trial on the basis of newly discovered evidence contending that the government failed to disclose an alleged promise of leniency made to its key witness in return for his testimony. *Id.* at 150, 92 S.Ct. at 764. The Court held that when the reliability of a witness may be determinative of guilt or innocence, a suppression of such material evidence constitutes a violation of due process and requires a new trial. More recently in *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the Supreme Court reaffirmed that the *Brady* rule does apply to impeachment evidence, but the government's failure to disclose does not require automatic reversal. *Id.* at 678, 105 S.Ct. at 3381. A constitutional error occurs, and the conviction must be reversed, "only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *Id.* In determining the materiality of the evidence, the Supreme Court stated:

> The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the

result of the proceeding would have been different.

*Id.* at 682, 105 S.Ct. at 3383.

Therefore, to obtain a new trial under a *Brady* claim, the defendant must show the evidence was favorable, suppressed, and material to his case. *United States v. Dimas,* 3 F.3d 1015, 1017 (7th Cir.1993) (citations omitted). The preliminary issue here is whether the evidence was actually favorable to Veras. As the district court noted, the allegations involved are "unquestionably serious and of value for impeachment purposes." Officer Granias is alleged to have taken money belonging to government informants, lying on search warrant applications, and stealing money during police searches. The allegations were serious enough that the United States Attorney's Office felt the need to investigate the officer. We find that due to the seriousness of these allegations, the evidence was valuable to Veras for impeachment purposes. *See United States v. Douglas,* 874 F.2d 1145, 1163–64 (7th Cir.1989).

Next the government argues that at the initial point in the investigation there was no corroborating evidence; therefore, the information was only speculative and disclosure was not necessary. The district court, however, believed the Canezaro information should have been disclosed prior to trial under the discovery procedures in the United States Attorney's Office and Local Criminal Rule 2.04.[6] While the government disagrees with this aspect of the district court's ruling and does not concede its correctness, we find that the government had an obligation to disclose the evidence of the investigation. The government relies on *Tate v. Wood,* 963 F.2d 20, 25 (2d Cir.1992), and *United States v. Agurs,* 427 U.S. 97, 109 & n. 16, 96 S.Ct. 2392, 2400 & n. 16, 49 L.Ed.2d 342 (1976), in support of its argument that speculative and preliminary information need not be disclosed under *Brady.* Carefully read, *Agurs* and *Tate* do suggest that purely speculative and preliminary information may be withheld; however, the information available at

---

6. Local Criminal Rule 2.04 of the United States District Court for the Northern District of Illinois provides that within five days after the arraignment the United States Attorney and the defendant's attorney shall confer, and upon the defense counsel's request, counsel may inspect or copy any evidence favorable to the defendant.

the time the Chicago Office recused itself was not mere speculation. The Chicago Office thought enough of its involvement with Officer Granias in pending future cases to recuse itself from proceeding further with its own investigation and transferred the investigation to the Milwaukee Office. Further, the information had some grounds and was of a serious enough nature that the investigation proceeded for well over two years. The need for disclosure under *Brady* and Local Rule 2.04 was warranted.

 Since favorable evidence was not disclosed by the government, the primary issue is whether the evidence was material to Veras's case. The starting point is to determine "what evidence would technically be admissible and what portion of that evidence [the court] would allow in under the discretion granted to it by Rule 608(b)."[7] *Dimas,* 3 F.3d at 1019. We find that the district court's analysis under *Dimas* could not be more correctly stated. Although the government should have disclosed the investigation of Officer Granias, the information would not have made a difference in the result of the trial. The district court stated:

> Given Officer Granias's denial of each and every allegation at the hearing, the court would not have changed its ruling denying the motion to suppress. The outcome of the trial would also have not been affected. In light of Officer Granias's denial, defense counsel would have been unable to elicit any admissible evidence, much less material evidence, impacting the officer's credibility. Rule 608(b) would have precluded defense counsel from impeaching Officer Granias with extrinsic evidence supporting the Canezaro allegations. Any such extrinsic evidence would also have been inadmissible to show bias. Defense counsel would have been prevented from arguing the impermissible inference created by the mere asking of accusatory questions relat-

ing to Officer Granias's alleged misconduct. Because the suppressed evidence would not have affected the outcome of the suppression hearing or the trial, defendant's due process rights were not violated and his motion for a new trial pursuant to *Brady* and *Giglio* is denied.

*Veras,* 860 F.Supp. at 478–79.

We find no fault with the district court's holding.

 Further, the post-trial testimony of the confidential informant, who provided information for the Canezaro search warrant, is irrelevant to a motion for a new trial under *Brady.* In *Dimas,* the *Brady* analysis was limited to the evidence known at the time of the trial. *Dimas,* 3 F.3d at 1019. We explained that "later developments in the investigation, if any, are irrelevant because the question is whether the result would have changed if the prosecutors disclosed the evidence at the time, not whether the outcome would differ if the case were tried today." *Id.* The confidential informant's testimony would only be relevant to a claim of newly discovered evidence. In meeting the requirements for a new trial based on newly discovered evidence, "the defendant must show that the evidence (1) came to their knowledge only after the trial; (2) could not have been discovered sooner had the defendants exercised due diligence; (3) is material, and not merely impeaching or cumulative; and (4) would probably lead to an acquittal in the event of a retrial." *United States v. Oliver,* 683 F.2d 224, 228 (7th Cir.1982); *see also United States v. Fruth,* 36 F.3d 649, 651 (7th Cir.1994); *United States v. Gonzalez,* 933 F.2d 417, 447 (7th Cir.1991). For the same reasons as previously stated under the *Brady–Giglio* analysis, the defendant cannot show that the evidence is material or would result in an acquittal given the limited cross-examination of Officer Granias permitted under Rule 608(b). In light of the proper def-

---

7. Rule 608(b) of the Federal Rules of Evidence provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of a crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative

of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

erence given to the district court and the strength of the evidence in this case, we find that through the court's correct application of the law in its well-reasoned memorandum, the defendant's motion for a new trial was correctly denied.

We AFFIRM.